Abraham N. Geller, J.
This is an action brought by the City of New York under its Fair Housing Laws for an injunction restraining defendant Patrick Vitucci (the complaint was dismissed during trial as against the other named defendants when *51 Ms individual ownersMp of the subject house was established) from declining to sell housing accommodations to any person because of race, color, religion, national origin or ancestry.
The Fair Housing Laws created a City Commission on Human Bights and fixed the procedure for dealing with discrimination in housing accommodations. On January 6, 1965 Mrs. Myrtle Braithwaite and Miss Ellen Creasy filed a complaint with the commission, alleging that defendant had refused to sell them a house at 945 East 100th Street, Brooklyn, because of their race. The commission’s attempts to conciliate the matter were unavailing when Vitucci failed to keep an appointment made over the telephone with its Chief Investigator. Thereafter, pursuant to the statute, the commission in a subscribed written statement dated March 23, 1965, annexed as an exhibit to the complaint herein, directed the Corporation Counsel to commence this action for a “temporary injunction.”
The statutory procedure then in effect was set forth in section D41-4.0 b of the Administrative Code of the City of New York which made provision for two actions or two stages of legal proceedings:
(1) “Upon failure to conciliate or otherwise eliminate an alleged discriminatory practice and upon making a determination of probable cause for crediting the allegations of a complaint filed hereunder, the commission may direct the corporation counsel to commence an action in the supreme court * * * seeking appropriate injunctive relief against such defendant or defendants, in order to prevent any conduct tending to render ineffectual any steps that the commission or the courts may take in order to eliminate or remedy such violation
(2) “Within thirty days from the effective date of such injunction, the commission shall render its findings unless the time for rendering of such findings is extended by the court upon such terms and conditions as it deems just and proper. The commission shall have power to hold hearings and to issue subpoenas. If, after such hearings, it shall find that any person named in the complaint has engaged in conduct in violation of section Dl-3.0 hereof and that relief of a final and permanent nature is warranted to eliminate and remedy discriminatory practice and to enforce the provisions of this title, it shall direct the corporation counsel to prosecute any action or proceedings in the supreme court as may be necessary to obtain such relief and enforcement.”
It should be noted that this procedure was far less effective and practical than that governing the State Commission against Discrimination, set forth in article 15 of the Executive Law, and *52 that only recently has the Administrative Code been amended to incorporate the State procedure with some added features (Local Laws, 1965, No. 97 of City of New York, repealing titles C and D and amending title B of chapter 1 in relation to the powers and jurisdiction of the City Commission on Human Rights — see City Record, December 18, 1965).
In this action for an injunction instituted by and in the name of the City of New York a complaint verified on March 31, 1965 was filed on that day and an order to show cause with a temporary restraining provision Avas then obtained. However, the required service of the order to sIioav cause or of a reneAAal thereof was not effected, although the summons and complaint are claimed to have been served on Vitucci on April 16, 1965. It appears that Vitucci leased the two apartments in this two-family house in August, 1965. A subsequent renewal of the order to show cause was finally served on August 31, 1965 and Special Term then restrained Vitucci, pending final determination, from further selling, leasing, renting or otherwise disposing of the premises.
In the meantime the commission had proceeded with a hearing on April 15,1965. In a decision dated that day it made a finding with regard to a discriminatory practice. But no further action or proceeding based thereon has been instituted, nor has the instant complaint been amended or supplemented in any manner. Moreover, there has been nothing offered to establish the statutory precondition for the second stage of proceedings that the commission shall find “ that relief of a final and permanent nature is warranted to eliminate and remedy discriminatory practice and to enforce the provisions of this title ” and “ shall direct the corporation counsel to prosecute any action or proceedings in the supreme court as may be necessary to obtain such relief and enforcement.”
Accordingly, despite the undoubted power of the court under CPLR 3017 (subd. [a]) as Avell as its general jurisdiction in law and equity to render such type of judgment as is appropriate to the evidence received, irrespective of the nature of the relief demanded, the court does not reach the question of the city’s request added at the trial to include a direction in the judgment for specific performance that defendant convey to the complainants title to the premises subject to the existing leases. Under the statutory pattern the only matter presently before the court is the complaint for an injunction by reason of an alleged discriminatory practice.
Although the complainants never met Vitucci and there is no direct evidence that he was informed that they were Negroes, the *53 only reasonable inference to be drawn from the evidence as a whole, including his own unbelievable explanation, is that he failed to enter into any negotiations with them regarding the house which he had advertised for sale, because he had been informed of their color and race. That is the only rational explanation of the ensuing combination of facts and circumstances. In the field of racial discrimination it is to be expected that the person accused will not admit the charge and that direct evidence of his motivation can rarely be presented. The question of discrimination will generally require an evaluation of several factors. Because of its often circumstantial nature it is essential in the interests of justice to all concerned that the evidence be analyzed to determine whether the finding of discrimination is the only inference which may reasonably be drawn.
Vitucci acquired in March, 1964, as the result of a foreclosure sale, a group of five newly constructed two-family houses on East 100th Street, Brooklyn. By November, 1964 he had sold three of them and was advertising for sale the remaining two, giving a description, price and directions. Complainants saw the ad, went there, and were shown the end house, which interested them, by a neighbor from across the street. A sign on the house requested those interested to consult with this neighbor. He had received a key from the original builder, was asked by Vitucci to continue to show the houses and to ask people interested to call him, giving him his phone number for that purpose. Complainants returned the following day, tried to get detailed information from the neighbor, were given Vitucci’s number and gave the neighbor their number. Defendant contends that the neighbor was not a broker or agent but his agency for the purpose here required is quite clear. The neighbor testified that he called Vitucci late that evening, gave him the ladies’ number and told him that he should get a call from them. He denied that he told Vitucci that they were Negroes. But, in light of the developments or, rather, lack thereof and of defendant’s incredible explanation, this cannot be accepted at face value.
Complainants promptly called the phone number given by the neighbor, .spoke to a woman Avho called herself Mrs. Vitucci, indicated their interest in buying this house and were told to call back the following morning. Objection was taken to this and the other telephone conversations Avith Mrs. Vitucci on the ground of insufficient identification and lack of proof of agency. However, for the limited purposes here involved both of these elements were sufficiently established. Vitucci testified that *54 he had recently separated from his wife, that he knew that the neighbor called his wife about prospective purchasers, and that he got their names and telephone numbers from his wife. The nature of the messages taken over that telephone and the repeated calls by complainants concerning the transaction also establish by circumstantial evidence identity of the woman answering the phone sufficient for the purpose of proving, together with the other evidence in the case, notice to Yitucci of complainants’ desire to negotiate and purchase this house (Levine & Co. v. Wolf’s Package Depot, 29 Misc 2d 1085, affd. 1 A D 2d 874).
Leaving aside the one telephone conversation with Yitucci testified to by complainants, which he disputes and which has not been sufficiently identified, the various calls to the given phone number show that complainants were told that there was a binder by somebody on the house, that they subsequently offered one themselves if that did not go through, and finally were told that the house was no longer available. However, complainants noted that the same newspaper advertisement appeared in December and that the sale sign was still on the house in late December. Their efforts to get further information at this time were unavailing.
Yitucci admitted that he received from his wife the names and telephone numbers of prospective purchasers forwarded by the neighbor. He testified that he did not bother to call any of them because he wanted to sell the two houses as a package deal and as is, since they were not completely finished. But he continued to run the advertisement to the general public, which offered the two houses for sale as separate units, and kept the separate sale signs on each of them, with no indication of the unusual condition allegedly mentally reserved by him. His story was that in November, 1964 he had made an informal but written agreement for such a package deal with a contractor, now deceased, which had been cancelled in February, 1965 and, during the intervening period, there was no point in getting in touch with other prospects. But it turned out that, not only was the alleged contracting party dead, but the written agreement had been lost. Moreover, he did not get in touch with complainants in February after the alleged cancellation. In addition, he admitted that he knew in February of their complaint before the commission, promised its Chief Investigator over the telephone that he would make an appointment to discuss the matter, but forgot about it.
It appears that, through his attorney, at about the time this action was commenced, he offered to sell the house to complain *55 ants at a price considerably in excess of his original solicitation offer, claiming the difference to be the cost of improvements. Complainants did testify that some improvements were required to be completed and the Corporation Counsel’s brief concedes that one of the factors to be taken into consideration as to the closing price would be the amount to be credited for such finishing improvements. But defendant’s belated offer was viewed as excessive and discriminatory.
The inference is clear that defendant’s failure to enter into any negotiations with complainants, despite their repeated attempts to negotiate, during the period of his continuing sales offer of this house to the general public, is attributable to discrimination because of their race. The city is accordingly entitled to the injunctive relief requested in this action.
The injunction, of course, is not the permanent relief contemplated. It is granted to be effective for a period of 90 days from date of entry of judgment to be settled herein, subject to further extension by proper application to the court in connection with any subsequent proceedings taken. During that period the commission should promptly proceed with efforts at conciliation, which may resolve the differences between the parties and result in a conveyance on reasonable terms. Failing such result, the commission should proceed with a hearing and the making of appropriate findings and direction for final and permanent relief, as in its judgment based on the evidence it may deem warranted. Settle judgment accordingly.