Reginald and Otelia GRANT, Plaintiffs-Appellants Cross-Appellees,

v.

John H. SMITH, d/b/a John Smith Construction Company, John H. Smith, Inc., Echo Builders, Inc. and Mrs. Betty Smith, Defendants-Appellees Cross-Appellants.

No. 75–3565.

United States Court of Appeals, Fifth Circuit.

June 2, 1978.

Joseph R. Terry, Jr., John R. Myer, Atlanta, Ga., for plaintiffs-appellants cross-appellees.

George G. Chenggis, Thomas H. Knuth, Platon Constantinides, Chamblee, Ga., for defendants-appellees cross-appellants.

Before GODBOLD and CLARK, Circuit Judges, and HOFFMAN *, District Judge.

* Senior District Judge for the Eastern District of Virginia, sitting by designation.

1. §§ 1981 and 1982 have their origins in the Civil Rights Acts of 1870 and 1866 respectively. 42 U.S.C.A. § 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C.A. § 1982 provides:

> All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof, to inherit, purchase, lease, sell, hold, and convey real and personal property.

PER CURIAM:

This is an appeal from a District Court Order denying relief to plaintiff blacks under 42 U.S.C.A. §§ 1981 and 1982[1] and 42 U.S.C.A. § 3064[2] for defendants' alleged refusal to rent or sell them a house. Defendants also appeal from the order denying recovery upon their counterclaim for rental value of property temporarily enjoined by the court pursuant to the Fair Housing Act. For reasons indicated below, we remand for additional findings of fact both the main action and the counterclaim.

Plaintiffs, husband and wife, moved to Atlanta with their two minor children on September 15, 1975. Upon their arrival they discovered they could not, for reasons immaterial here, immediately occupy the house they had agreed to rent. They secured a motel room and began to seek other housing.

The plaintiffs' first contact with defendant, John H. Smith, (Smith) was on September 16, when Reginald Grant (Grant) telephoned Smith in response to an advertisement in the *Atlanta Constitution.* The defendant indicated he had two houses in the Gant Quarters Subdivision which he was willing to lease with an option to buy. A brief discussion of the terms of the lease ensued and Grant indicated his intention to visit defendant's subdivision the next day to inspect the houses.

2. 42 U.S.C.A. § 3604, the Fair Housing Act, is Title VIII of the Civil Rights Act of 1968. In pertinent part, 42 U.S.C.A. § 3604 makes it unlawful:

> (a) To refuse to sell or rent after the making of a bona fide offer, or to refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny, a dwelling to any person because of race, color, religion, sex or national origin.
>
> (b) To discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, or national origin. . . .
>
> (d) To represent to any person because of race, color, religion, sex, or national origin that any dwelling is not available for inspection, sale, or rental when such dwelling is in fact so available.

Within a few minutes of the first conversation, Grant again telephoned Smith to inform the defendant that he was black and to inquire if this would pose any problems in a transaction between the two. There is conflicting testimony regarding the rest of the conversation. Grant testified that Smith stated this created no problem as to himself but, before leasing or selling, he (Smith) would have to obtain the approval of the neighbors who had been upset when blacks previously looked at houses in the subdivision. It was Smith's testimony that he was agreeable to dealing with plaintiffs but indicated that there might be some disapproval on the part of the neighbors. He further testified that he agreed to talk to the neighbors in an effort to minimize any objections to the Grants, but only after Grant repeatedly requested that he do so. The court below found the defendant's version of the conversation to be more credible.

Prior to inspecting the houses in Gant Quarters, Grant contacted the Office of Regional Counsel, Department of Housing and Urban Development (HUD), in Atlanta. Grant indicated that he might need legal assistance in dealing with Smith and was referred to a private attorney because of HUD's backlog and inability to provide injunctive relief.

At approximately the same time Grant also contacted Rhett Baird, Executive Director for the Atlanta Open Housing Coalition to arrange for a "test."[3] The first such test occurred on September 19 when Baird and Grant separately visited the subdivision. Smith was not at the subdivision and the tester met only with Wheeler, a construction superintendent. Baird, a white man, met with Wheeler inside the site office, inquired about the prices of the houses, and was given a price list of available houses. When Baird made further inquiries Wheeler indicated a willingness to show him the houses, an offer Baird declined. Grant saw Wheeler as Grant was driving into the subdivision and Wheeler was leaving the office. Grant commented on the attractiveness of the subdivision and inquired if Wheeler handled sales or rentals. According to Grant's testimony, Wheeler indicated that he did not, that he preferred to stay away from such matters. Grant neither asked for nor received the price list Baird had been given.

The second test took place on Friday, September 20, Baird went first to Gant Quarters where he met with Smith and was given a tour of 2910 Gant Quarters Drive, a house in which he had expressed interest. He was told that the house was to be leased for one year at $550 a month with an option to buy for $75,900. A deposit of $2,000 was required, although there may have been a suggestion that $1,000 would be adequate. There was no discussion as to whether the deposit was refundable if the option was not exercised.

Grant proceeded to the subdivision within a few minutes of Baird's departure. He was informed by Smith that Smith planned to meet with a representative of a mortgage company the next Monday and hoped to obtain permanent financing in which case he would not be interested in leasing the property. Grant testified that he considered this to be a termination of any negotiations with Smith. However, Smith testified that Grant was to return to learn the outcome of the financial meeting. Furthermore, it was Baird's testimony that he

**3.** In his testimony Mr. Baird defined a test as "basically a controlled situation where a black and white person inquire about identical accommodations, whether it be house or apartment or what have you, having basically the same credentials and the same needs, where the only variable is color of skin, and observe any difference in treatment which might occur." (Tr. 36).

The use of testers has been accepted by the courts, tacitly or expressly, as an effective means of obtaining evidence of discrimination:

*Johnson v. Jerry Pals Real Estate,* 485 F.2d 528 (5th Cir. 1973); *Zuch v. Hussey,* 394 F.Supp. 1028 (E.D.Mich.1975); *United States v. Youritan Construction Co.,* 370 F.Supp. 643 (N.D. Cal.1973), modified as to relief and aff'd, 509 F.2d 623 (9th Cir. 1975); *Williamson v. Hampton Management Co.,* 339 F.Supp. 1146 (N.D. Ill.1972); *Brown v. Ballas,* 331 F.Supp. 1033 (N.D.Texas 1971); *Bush v. Kaim,* 297 F.Supp. 151 (N.D.Ohio 1969); *Newbern v. Lake Lorelei, Inc.,* 308 F.Supp. 407 (S.D.Ohio 1968).

understood from Grant that there was to a further meeting on Monday.

This action was filed that Friday afternoon, September 20. On October 1, the district court granted plaintiffs' request for a temporary restraining order by enjoining defendants from selling or renting the home located at 2910 Gant Quarters Drive. After a hearing on December 10, this injunction order was dissolved and the district court denied plaintiffs' request for a preliminary injunction. After a trial on the merits to the court without a jury, the district court entered extensive findings of fact and conclusions of law which formed the basis of the judgment presently on appeal.

In the course of its findings, the district court concluded

> The plaintiff's actions and conduct throughout this case have not been consistent with those of a person genuinely interested in securing residential accommodations on a nondiscriminatory basis, but rather have been more consistent with an effort to use the Civil Rights Act and the Fair Housing Act as a sort of "strike" suit, from which no amount of accommodation can extricate a person. This entire matter has had, and continues to have, the appearance to this Court of an attempted sham [or] "setup."

> .    .    .    .    .

> This Court also finds that the plaintiffs have not established by a preponderance of the evidence their burden of showing any discrimination in treatment because of race or that any discrimination occurred.

Previously, at the conclusion of the proceedings on the motion for preliminary injunction, the court also stated:

> But I simply want the record to show— and I am assuming that you are about to take it to the Fifth Circuit—that the whole procedure, starting with the day when I first heard it on Monday to date, convinces me that this is not a sincere and bona fide attempt on the part of the Plaintiffs, or hasn't been since that point in time, but that it has been dragged out and magnified far beyond anything that it ought to have been for the purpose of securing damages and/or attorney's fees.

■ While the evidence was sufficient to support the determination by the district court that there was no discrimination by defendants, it is not so clear or overwhelming that a contrary inference could not have been drawn. Ordinarily, such ultimate findings are for the trier of facts and will not be reassessed on appeal. However, where the court applies an improper legal premise in the course of its proceedings, appellate affirmance is not available. The problem for the case at bar is the court's expressed emphasis on plaintiffs' lack of good faith. If that conclusion affected the court's determination of nondiscrimination as to parts of the claim made, the refusal of relief would be in error.

■ Both section 1981 and section 1982, as they apply here, relate to protection of minority rights to contract for, to purchase, and to lease real property. In a similar vein, section 3604(b) protects the right to buy or rent without racial distinctions. The plaintiffs' good faith or lack of it would be pertinent to the claims asserted under these statutory provisions. The same is not true, however, as to the claims asserted under sections 3604(a) and (d) which prohibit the refusal to negotiate about or allow inspection of a dwelling because of race. Both negotiation and inspection involve aspects of real estate dealing which often precede the formation of any intent to buy or rent on the part of a prospective customer. To require a bona fide offer in such circumstances could render these protective provisions of section 3604 meaningless. Because the court's conclusions with regard to plaintiffs' lack of good faith may have caused it to conclude erroneously that no discrimination was present as to a refusal to negotiate or a refusal to make the subject premises available for inspection, we remand the cause to the district court for further consideration and, if that court deems necessary, further factual development.

Finally, we consider the counterclaim of John H. Smith, Inc., for damages because it was wrongfully restrained from selling or renting its property during the pendency of the temporary restraining order from October 1, 1975, to December 10, 1975, when the order was dissolved. The district court found the reasonable rental value of the house involved to be $550.00 per month, but refused relief on the grounds that defendant did not prove that a prospective purchaser or renter was ready, willing and able to buy or rent the property in this time interval. Once again, the barrier may have been raised too high. If the injunction order is found to have been improperly issued in its inception or wrongfully continued because no discrimination was present, the general rule is that the enjoined party may recover damages, 43 C.J.S. Injunctions section 281b (1945); *Hutchins v. Munn,* 209 U.S. 246, 28 S.Ct. 504, 52 L.Ed. 776 (1908); *Osage Oil & Refining Co. v. Chandler,* 287 F. 848 (2 Cir. 1923), if said damages are the actual, natural, and proximate result of the wrong committed. If it is determined by the district court that the temporary restraining order was improperly issued in its inception, or wrongfully continued, the law implies damage from the mere fact that defendant was, for a time, deprived of the right to sell or rent the premises. Naturally, since the defendant was under an injunctive order not to sell or rent the particular property, required proof that a prospective purchaser or renter would want this unit is too great a burden to impose on the defendant.

Gant Quarters was in the process of construction when the alleged discrimination took place. The record does not disclose the availability and demand for other units in the housing project during the injunctive period. It may be that the district court will conclude that the temporary restraining order, even though wrongfully issued, did not result in damages which were the actual, natural and proximate result of the injunctive order, in which event only nominal damages need be assessed as, under such circumstances, there has nevertheless been a deprivation of use without damage.

On the other hand, if the demand for the units in Gant Quarters was substantial during the period of the injunctive order, the reasonable rental value of the property may be considered by the district court in ascertaining defendant's damages for such period as the evidence may disclose that the particular unit could probably have been rented or sold.

The cause is remanded to the district court for further proceedings not inconsistent herewith. Each party should bear its own costs.

REMANDED.