Mary JOPLIN, Petitioner-Respondent,

v.

MISSOURI COMMISSION ON HUMAN RIGHTS, Respondent-Appellant.

No. 12545.

Missouri Court of Appeals,
Southern District,
Division Three.

Nov. 10, 1982.

James E. Reeves, Ward & Reeves, Caruthersville, for petitioner-respondent.

John D. Ashcroft, Atty. Gen., Scott A. Woodruff, Asst. Atty. Gen., Jefferson City, for respondent-appellant.

PREWITT, Judge.

The Missouri Commission on Human Rights (Commission) found that respondent violated § 213.105(1), RSMo 1978, by refusing to negotiate with a black person for the rental of a dwelling. It ordered her to "desist from refusing to negotiate with black persons who wish to rent any of her dwellings"; to "post the Commission Fair Housing poster on the dwellings she rents"; and to pay the complainant five hundred dollars. Upon judicial review the circuit court set aside appellant's order, finding "that the Decision and Order is in excess of statutory authority and erroneously interprets Section 213.105(1) R.S.Mo., 1979; and that the award of $500.00 damages is an abuse of discretion and unreasonable". The Commission appeals.

Certain principles govern judicial review of the Commission's order. Courts may not reweigh the evidence but must review it in the light most favorable to the Commission's decision. *County of St. Louis v. Brooks,* 614 S.W. 283, 286 (Mo.App.1981). If supported by competent and substantial evidence the court must defer to the Commission's findings and cannot substitute its judgment of the facts for that of the Commission. *Percy Kent Bag Company v. Missouri Commission on Human Rights,* 632 S.W.2d 480, 487 (Mo. banc 1982). The deference given to an administrative board's findings include the determination of the credibility of witnesses. *Prokopf v. Whaley,* 592 S.W.2d 819, 823 (Mo. banc 1980). Following these principles, the Commission's findings of fact must be upheld.

The complainant, Gladys Johnson, a black woman, testified that on May 12, 1979, she asked respondent about renting the dwelling and was told it was already rented. Respondent testified that Johnson "asked if the house was for rent and I told her it was rented." The dwelling was rented later that day by a white person, Carol McPhail. Johnson and McPhail testified that the house appeared vacant on May 12. Earlier that week respondent had learned that her present renter had left the premises or would be leaving shortly. The rent was paid until the end of May. Where the testimony of respondent and Johnson differed, the Commission found that Johnson's version was more credible.

Respondent claims that Johnson's testimony did not constitute competent and substantial evidence because it was uncertain and contradictory. The basis for this contention is that during the taking of her deposition Johnson changed the date that she asked about renting the house from early April to May 12 after the attorney for the Commission discussed the dates with her; that the Commission found Carol McPhail's testimony to be credible and it contradicted Johnson's in two respects as,

contrary to Johnson, McPhail stated there was no "FOR RENT" sign on the premises and that the house was vacant only for a few days; that Johnson stated that respondent told her the house was already rented, whereas, Johnson's mother testified respondent said, "It's not for rent"; and because when asked by respondent's attorney why the "refusal to rent this place to you was racially motivated or was discrimination against you", Johnson said, because the house stayed empty for about two months.

It was for the Commission to determine if these matters affected Johnson's credibility. Her deposition testimony did not destroy her testimony at the hearing. A statement by a party prior to the trial, although admissible as impeachment, does not destroy the trial evidence as proof. *Wilson v. Missouri-Kansas-Texas Railroad Company,* 595 S.W.2d 41, 44 (Mo.App.1980). Contradictions between court testimony and a deposition are matters for the trier of fact to assess. Id. The aforesaid principles would be applicable when the Commission is the finder of fact. McPhail's testimony does not appear to contradict Johnson's as to any principal issue, but even if so, the Commission was entitled to believe Johnson. Nor do we think that Johnson and her mother's testimony is significantly contrary as whether the house was "already rented", or "not for rent", both indicate that the house could not then be rented.[1]

It is not required that Johnson be able to formulate a basis for claiming that race was a motive in respondent refusing to negotiate with her. Section 213.105 is very similar to 42 U.S.C. § 3604 and we think that the federal decisions interpreting § 3604 are helpful here. Under those decisions if a prima facie inference of discrimination is shown, the burden shifts to the owner to show a satisfactory explanation and if that does not occur, discrimination is established. *Smith v. Anchor Building Corporation,* 536 F.2d 231, 233 (8th Cir.1976); *United States v. City of Black Jack, Missou-*

---

1. As earlier stated Johnson and respondent seem to essentially agree on what Johnson asked and what respondent told her.

*ri,* 508 F.2d 1179, 1184–1185 (8th Cir.1974), cert. den. 422 U.S. 1042, 95 S.Ct. 2656, 45 L.Ed.2d 694 (1975); *Williams v. Matthews Company,* 499 F.2d 819, 827 (8th Cir.1974), cert. den. 419 U.S. 1021, 95 S.Ct. 495, 42 L.Ed.2d 294, 419 U.S. 1027, 95 S.Ct. 507, 42 L.Ed.2d 302 (1974). See also *McDonnell Douglas Corporation v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973). As hereafter discussed, we believe a prima facie case of discrimination by failing to negotiate was shown and as respondent did not show otherwise to the satisfaction of the Commission, the discrimination was sufficiently established.

Aside from Johnson's testimony, respondent also contends that the Commission's decision was not supported by competent and substantial evidence because respondent presented uncontroverted evidence that she owned four other rent houses which were all rented to blacks; and that numerous other persons, both black and white, inquired about the rent house, and respondent treated all inquiries in the same manner by stating the house was rented. This house had never been rented to a black person. Respondent could refuse to negotiate for the rental of a house to a black while owning other houses which were rented to blacks. Why she might do this we do not know, but she could have her own reasons for wishing not to rent a certain house to a black. Respondent cites *Day v. Niebur,* 534 S.W.2d 843, (Mo.App.1976), stating that the facts here "fall squarely within" that decision as the evidence shows that respondent treated all inquiries the same. We do not think that decision controlling as the evidence here indicates that Johnson and McPhail were treated differently. When Johnson asked if the house was for rent it was indicated to her that it was not. McPhail did not get such a response. McPhail said that when she asked respondent if the house was for rent, respondent "never did say". This encouraged McPhail to talk to respondent later.

Respondent contends that her statement that the house was already rented was not sufficient to show a refusal to negotiate. She contends that it "was literally true" that the house was already rented because the tenant who was leaving had paid the rent for the full month and Johnson did not make any attempt to find out when the house would be available and talked to respondent at a time when respondent was busy at her business. She also contends that as the Commission found that Johnson did not meet respondent's qualifications to rent the house,[2] respondent had no duty to negotiate with an unqualified renter.

The refusal to rent requires both a bona fide offer and that the offer be made by a qualified person but neither is required for a refusal to negotiate. *United States v. Youritan Construction Company,* 370 F.Supp. 643, 650 (N.D.Cal.1973). See also *Grant v. Smith,* 574 F.2d 252, 255 (5th Cir. 1978). Respondent had a duty to at least discuss the rental with Johnson to see if she was qualified and not to mislead her as to the availability of the house. The false statement of an owner that a dwelling is no longer available is a refusal to negotiate under discriminatory housing acts. *Howard v. W.P. Bill Atkinson Enterprises,* 412 F.Supp. 610, 612–613 (W.D.Okl.1975). See also *Wharton v. Knefel,* 562 F.2d 550 (8th Cir.1977); *LaPierre v. Massachusetts Commission Against Discrimination,* 354 Mass. 165, 236 N.E.2d 192 (1968); *Wurman v. City Commission on Human Rights,* 53 Misc.2d 979, 281 N.Y.S.2d 198 (1967); *City of New York v. Camp Construction Co.,* 51 Misc.2d 50, 272 N.Y.S.2d 631 (1966).

McPhail also talked to respondent at her business and believed that the house might be available for rent, but Johnson was led to believe otherwise. No explanation was given by respondent as to why they were treated differently. Even if the statement that the house was rented was

2. The Commission found that "Respondent's criteria for renters was that she first sought an older settled couple, then a younger settled couple without children or with children who were not home during the day" and that there was no evidence to show that Johnson "met these criteria."

literally true, it was clearly misleading. Respondent would have known that the statement she made indicated that the house had already been rented to someone who would shortly move in and the house would not be available for rent soon. It could not be expected that Johnson would ask further about the house being available, when it had been indicated to her that the house had recently been rented. As no satisfactory explanation was shown as to why Johnson and McPhail were treated differently, there was sufficient evidence before the Commission for it to find that respondent failed to negotiate with Johnson because of Johnson's race.

 Respondent contends that the Commission had no statutory authority to find her guilty of failing to negotiate because the executive director of the Commission did not make a finding "that probable cause exist for crediting the allegations of the complaint" as provided in § 213.120.2, RSMo 1978. Following the filing of the original complaint, the executive director found that probable cause existed that respondent refused to rent to Johnson because of her race. Thereafter, an amended complaint was filed contending that respondent falsely represented to Johnson that the dwelling was not available for rental and refused to rent or negotiate for rental of the dwelling to her. No new parties were added. The director made no further finding of probable cause following the amended complaint. Respondent contends that absent such a finding the Commission had no authority to proceed with a hearing.[3]

Section 213.120.5, RSMo 1978, provides that the "complainant or the commission shall have the power reasonably and fairly to amend any complaint". Section 213.120.-10, RSMo 1978, states that the Commission "shall establish rules of practice to govern, expedite and effectuate the foregoing procedure". Under this authority the Commission has provided that after the expiration of the time for filing an original complaint or after a hearing has been set an amendment to the complaint may be permitted if the amendment "is based upon the same alleged unlawful discriminatory practice as the original complaint and so long as no new party complainant or party respondent is named therein." 4 CSR 180–2.010(5); 4 CSR 180–2.030(3).[4]

The contentions that respondent refused to rent and refused to negotiate with Johnson arose from the same facts. The original complaint alleged basically the same facts as testified to by Johnson. It did not contain any specific reference to failure to rent or failure to negotiate. The determination of probable cause by the director was based on the same facts as the facts later found to be a failure to negotiate. The director found that probable cause existed for crediting the allegations of the complaint, that is, that the factual allegations supported a finding of discrimination. The discriminatory practice was the same. That was not to rent to blacks. That can be accomplished by refusing to negotiate with them as well as by refusing to rent to them after discussion and negotiation. The finding of probable cause was sufficiently related to the amendment to allow the Commission to proceed to a hearing without a further finding of probable cause by the director as the finding was based on the same facts and discriminatory practice as that charged in the amendment.[5]

The remaining question is whether the Commission properly awarded $500 to John-

---

3. Prior to evidence being presented, the hearing examiner stated that it was his "understanding from the prehearing that ... the jurisdictional prerequisites to this hearing have been stipulated to." Counsel for the parties then acknowledged that this was correct. What "jurisdictional prerequisites" they had reference to, and whether that included "probable cause" is not apparent from the record.

4. The record reflects that the amended complaint was filed after the expiration of the time for filing an original complaint (See § 213.120.-10, RSMo 1978) and after a hearing was set.

5. There is no contention that respondent was prejudiced due to the time the amended complaint was filed. It was filed and respondent's attorney served by mail on September 8, 1980. The hearing was held in Caruthersville on October 21, 1980.

son.[6] Section 213.120.6, RSMo 1978, provides that where a discriminatory housing practice is found the Commission may issue an order "requiring the respondent to cease and desist from such discriminatory housing practice, requiring such other affirmative action as in its judgment will effectuate the purposes of this Chapter, including an award of actual damages". We find no cases interpreting this provision. 42 U.S.C. § 3612(c) provides for "actual damages" by "private persons" seeking to enforce housing rights granted by 42 U.S.C. §§ 3603–3606. Decisions under that section support the award here.

Actual damages in a housing discrimination case include deprivation of civil rights, emotional distress, and humiliation. *Smith v. Anchor Building Corporation,* supra, 536 F.2d at 236; *Williams v. Matthews Company,* supra, 499 F.2d at 829; *Seaton v. Sky Realty Company, Inc.,* 491 F.2d 634, 636–637 (7th Cir.1974); *Steele v. Title Realty Company,* 478 F.2d 380, 384 (10th Cir.1973); *Morehead v. Lewis,* 432 F.Supp. 674, 678 (N.D.Ill.1977), affd. without op. 594 F.2d 867 (7th Cir.1979).

Respondent contends that the only evidence of plaintiff's damages was her statement that she felt she had been lied to and as a result "felt really bad" and that this was insufficient on which to base the award. Citing *Nekolny v. Painter,* 653 F.2d 1164 (7th Cir.1981), respondent contends that Johnson's statement was similar to the court finding there that a single statement by a party that he was depressed, a little despondent, or even completely humiliated, is not enough to establish an injury.

 Johnson also testified that she was looking for a new place to live because "the one that I had wasn't no good" and she "felt bad because my kids was small and didn't have no where to—decent to lay, sleep. The rat had bit my baby and the house that I was living in, wasn't no running water, no fountain, nothing but a commode." Assuming that those statements are true, the failure and delay in finding a

better place to live, as respondent's house apparently was, could lead to continued emotional distress, which might have ended if Johnson could have rented the house. When we consider that, together with the violation of Johnson's civil rights as found by the Commission, we do not believe the amount awarded was unreasonable. The facts here are much different than *Nekolny.* It did not involve housing discrimination nor the type of emotional distress present here.

The judgment of the circuit court is reversed and the cause remanded to the circuit court with directions to enter judgment affirming the order of the Commission.

GREENE, C.J., and FLANIGAN and MAUS, JJ., concur.

---

**6.** Respondent does not contend that the other conditions imposed on her by the Commission's order were beyond the Commission's authority where discrimination is found.