**Frank BEAN, d/b/a Bean Properties, Respondent,**

v.

**MISSOURI COMMISSION ON HUMAN RIGHTS, Appellant.**

No. 67260.

Missouri Court of Appeals, Eastern District, Southern Division.

Jan. 16, 1996.

Jeremiah W. (Jay) Nixon, Attorney General, Karen M. Speiser, Asst. Attorney General, Jefferson City, for appellant.

Stephen E. Strom, Finch, Bradshaw, Strom & Steele, L.C., Cape Girardeau, for respondent.

SMITH, Judge.

The Missouri Commission on Human Rights (Commission) appeals from a judgment of the circuit court reversing a Com-

mission decision and order and remanding to the Commission for further proceedings including a new evidentiary hearing. The Commission decision found Frank Bean, d/b/a Bean Properties (Bean) had discriminated against Mary Thatch and Hassan Saleem (sometimes hereinafter applicants) because of their race in refusing to rent them an apartment. We reverse the judgment of the trial court remanding the matter to the Commission and reverse the decision and order of the Commission on the merits.

Applicants filed a complaint of discrimination against Bean with the Commission. Following an investigation, the Commission determined that probable cause existed to credit applicants' allegations. A hearing was held before Hearing Examiner Delores Shepard.

After the hearing, Shepard resigned her position with the Commission. It was still her intention to prepare findings of fact, conclusions of law, and a recommended decision and order for this case in her off hours. Because of time constraints and a potential conflict of interest, the case was transferred to Hearing Examiner Jane Rosenthal some fourteen months after the hearing. Six months thereafter Rosenthal issued Findings of Fact, Conclusions of Law, and a recommended Decision and Order. She found that Bean had violated § 213.040.1 RSMo 1986, by refusing to rent an apartment to applicants. She recommended that the Commission order Bean to compensate applicants $558.72 as damages for one year of rent differential, one month furniture storage, mileage, and deprivation of civil rights and emotional distress, and that Bean in the future cease using race as a factor in renting apartments. The Commission adopted the findings of fact, conclusions of law, and recommended disposition of the hearing examiner. Bean appealed that decision to the circuit court, and specifically raised the change of hearing examiners as error.

The trial court found that Bean had been denied due process under the circumstances of this case because of the change of hearing examiners. It ordered the cause remanded to the Commission for rehearing before a different hearing examiner.

Thatch moved from Champaign–Urbana, Illinois, to Parma, Missouri, during August of 1990 to be near her mother who was recently widowed and elderly. Parma is approximately 60 miles south of Cape Girardeau. While in Champaign–Urbana, Thatch had been employed for five years by the county probation and court services. In Parma she lived with her mother and worked part-time as a beautician. Soon after moving to Parma she decided to move to Cape Girardeau and sought an apartment for herself, her son, and Saleem, who planned to move in with her but was still located in Illinois. On August 13, 1990, Thatch went to Bean's apartment complex in response to a newspaper ad. She was shown two apartments. The first, referred to by applicants as a "basement apartment" [1], was unsatisfactory to her. She was then shown a second apartment which rented for $310 per month.

She filled out an application to rent that apartment and submitted a money order to hold the apartment. In her application Thatch indicated that she was self-employed. To the question of how long employed she stated "self-employed/student 5 years". She did not indicate that she was currently working for a beautician in Parma, nor did she note her previous employment in Illinois. She listed her monthly income at $700–800 with additional child-support income of $220. She did not list approximately $4700 in cash which she had received from her retirement account with her previous employer in Illinois when she left that employment. She listed no credit references and listed her mother as a personal reference. She gave her present address as a location in Parma and stated that had been her residence for three years. She listed her mother as landlord and to the question of previous address if less than 2 years answered "same". She did not list her previous landlord from Illinois. Bean was aware that Thatch was seeking full-time employment in Cape Girardeau.

---

1. Portions at least of the apartment complex were built into a hill. A "basement apartment" was one with either the front or back opening directly onto a ground level patio area and with the opposite wall for some portion of its height below ground level.

Saleem filled out the application some time after Thatch. Bean required that each person renting the apartment complete the application. Saleem listed a present address in Calumet City, Illinois, and his landlord as T.Y. Saleem. He gave a previous address in Chicago and a previous landlord as "Rev. M. Jennings". He listed his mother as Mary Jennings with an address corresponding to the previous residence address in Chicago. He listed his employer as Saleem Enterprises in Chicago for whom he had been employed for 5 years at a monthly income of $1350–2000. He gave no credit references and as a personal reference listed T.Y. Saleem.

Several days later the applicants called to see about their application and were told that the application had been denied, and to come by and pick up their deposit. When they arrived they talked to Bean. Saleem testified that Bean gave no reasons why their application was denied. Two memos from two different employees of the Commission indicated that Saleem had reported that Bean stated that the applicants' income and being from out-of-town were the reasons they were rejected. A witness who was present in the Bean office, unsuccessfully attempting to obtain employment, testified that Bean told Saleem the application was denied because Saleem had no employment in Cape Girardeau and his references were all relatives. Bean testified that he initially denied the application because applicants did not meet his income standards, but that after meeting them he was impressed with them and offered to rent them an identical apartment. He testified that Saleem became angry, refused any other apartment and left. The apartment which applicants had attempted to rent had been rented to a white couple after Bean's initial denial of the application.

Saleem believed that Bean may have offered them a basement apartment as an alternative. On questioning by the hearing examiner, he admitted he had no recollection of whether Bean offered any apartment and therefore had no recollection that if any such offer was made it involved a basement apartment. The independent witness testified that she heard Bean offer another apartment. The hearing examiner credited Bean's testimony that he offered another apartment.

Bean testified that his income requirement was normally that applicants' rent and utilities be 25–30% of their income or less. He does not include child support or maintenance as income because of past experience where such income has not been forthcoming and is therefore less reliable than job income. He also testified that Saleem's income was from out-of-town from a family business and did not evince earning capacity in Cape Girardeau. He did not check the references given by Thatch and Saleem because they were all family members and from experience, family members are unreliable because they almost always gave favorable responses whether true or not. Bean testified that as to students who listed income from their parents he would usually get verbal confirmation from the parents of that income, and would not require employment income to meet his income guidelines. Bean also testified that he regularly rented to black tenants and that there were ten or twelve units rented to blacks at the time of the hearing. There was no contrary evidence adduced.

The trial court in making the determination ordering a new hearing relied heavily upon an exchange on cross-examination which it considered to be particularly damaging to the credibility of Saleem and which it believed the hearing examiner had failed to properly consider because of not being able to observe Saleem's demeanor. It requires no observation of Saleem's demeanor to conclude that his credibility was severely damaged by the exchange. Saleem contended that Bean had refused to rent apartments at the front of the complex to blacks. He said this was based on his "research". He could not remember what "research" he conducted. He then said it was done by someone but he was not "at liberty to give those names". Upon inquiry by the hearing examiner he stated that he did not know the names of the people conducting the "research". Even from a cold transcript it is apparent that Saleem created the Bean refusal to rent to blacks in the front of the complex from whole

cloth with no factual basis to support the allegation.

Section 536.080.2 RSMo 1994 provides:

2. In contested cases, each official of an agency who renders or joins in rendering a final decision shall, prior to such final decision, either hear all the evidence, *read the full record including all the evidence,* or personally consider the portions of the record cited or referred to in the arguments or briefs. (Emphasis supplied)

■ A member of an agency may still determine the credibility of witnesses even though he was not present to hear and observe the witnesses testify. *Webb v. Board of Police Commissioners of Kansas City,* 736 S.W.2d 451 (Mo.App.1987) [3, 4]. The statute in requiring the final decision maker to only have read the record, by implication at least, grants similar authority to one recommending only.

■ The hearing examiner is not the final arbiter of credibility. That function is reposed in the Commission. Whether the hearing examiner had an opportunity to view witness demeanor is irrelevant. The final determination is made by the Commission upon its review of the record.

Even though a referee hears the witnesses and makes the initial findings, the administrative body is not bound by the referee's findings but may review the record and determine therefrom the credibility of the witnesses and reach its own conclusions independent of the referee's findings. *Id.*

The trial court erred in remanding the case to the Commission for further hearing.

■ We turn now to the merits of the Commission decision. Our review is based upon the findings and conclusions of the Commission, not the judgment of the circuit court. *Biggs v. Missouri Commission on Human Rights,* 830 S.W.2d 512 (Mo.App. 1992) [1, 2]. We are to determine only whether the administrative decision is supported by competent and substantial evidence on the whole record; whether the decision was arbitrary, capricious or unreasonable; or whether the administrative action constituted an abuse of discretion. *Id.*

■ In order to prevail on a claim of discrimination a complainant must first establish a *prima facie* case by showing: (1) complainant is protected by the statute; (2) a landlord refused to rent to complainant after complainant made a *bona fide* offer to rent; and (3) complainant's race was a factor in the landlord's decision not to rent to complainant. *Id.* at [7, 8]. Once the complainant has established a *prima facie* case, the burden shifts to the landlord to set forth a legitimate, nondiscriminatory reason for the refusal to rent. *Id.* If the landlord articulates such a reason, the complainant must then demonstrate by a preponderance of the evidence that the articulated reason is merely a pretext for discrimination. *Id.* In determining whether applicants met the required burden of proof, we do not reweigh the evidence. *Id.* If the evidence before the agency warrants either of two opposed findings, this court is bound by the findings of the agency. *Id.* at [9, 10].

■ It does not appear that the applicants made a *prima facie* case. They were African–Americans and therefore protected by the statute. The refusal to rent element requires both a *bona fide* offer and that the offer was made by a qualified person. *Joplin v. Missouri Commission on Human Rights,* 642 S.W.2d 370 (Mo.App.1982) [7–9]. While the offer was *bona fide,* for reasons which we will discuss more completely later, the evidence did not establish that applicants were qualified persons under the legitimate non-discriminatory criteria established by Bean for acceptance as tenants. We do not find the evidence establishes a causal connection or nexus between Bean's actions and applicants' race. Further we find no evidence establishing Bean's articulated reasons for not renting to applicants were pretextual. We will discuss these elements together.

The Commission, having found a *prima facie* case, then found that Bean articulated a legitimate, non-discriminatory reason for the refusal to rent. That shifted the burden back to applicants to show that the articulated reasons were merely a pretext for discrimination. The Commission found that race was a factor because: (1) Bean did not check family references of complainants, yet

this was often done for students; (2) Bean rented to students, some of whom received income from parents but were not supported by a written guarantee from the parents; and (3) Bean rented the apartment involved to a white couple in one day.

The Commission found that "the implementation of criteria which was unevenly applied by [Bean] is cause to question their reasoning and view it as pretextual in nature". In arriving at that conclusion the Commission relied on *Biggs v. Missouri Commission on Human Rights, supra.* In that case the court upheld the Commission finding of discriminatory action because of divergent treatment of similarly situated persons, because the respondent in that case changed the explanation for the refusal to rent, and because there were no black tenants in the apartment complex.

Bean adequately explained why he did not check applicants' references, i.e., they listed no references that were not family. His past experience and general human experience teaches that family references tend to be less than totally objective. The Commission's comparison of Bean's treatment of student tenants with applicants is a comparison of apples and oranges. Students, almost by definition, are not fully employed and are dependent on assistance for their living expenses. That assistance frequently comes from family or from student loans. Bean would usually check with family where the assistance arose from that source to determine whether the family was in fact supplying the level of assistance claimed by the student. There is no contention that applicants were looking to family assistance to meet their living expenses. The reason for contacting family members was therefore not present, as it was with student tenants. Applicants supplied no information by which Bean could obtain objective information concerning their financial responsibility or their tenant responsibility. Further the record is silent concerning the race of the students to whom favored treatment was allegedly given. There is no showing that similarly situated students of different races were treated in different fashion, nor is there evidence that

similarly situated non-students were treated differently because of their race. It is only by comparing two differently situated groups, students and applicants, that the Commission was able to find discriminatory treatment. The law requires more than that.

The evidence also reflected that blacks were tenants in the complex. The explanation given by Bean for not renting to applicants was consistent throughout. They did not have a sufficient income level from local employment to meet Bean's criteria. The Commission also found that the delay in notifying applicants of the denial as compared to the immediate approval of a white applicant for the same apartment was indication of discriminatory treatment. The delay in processing the applicants' application occurred because Bean, who had to make the determination not to rent, was out of town at the time applicants applied. The white applicant was a member of a local fire department whose references and employment could be quickly checked out by Bean employees [2]. Without more, the difference in time in processing the application does not evince discrimination.

The application filed by applicants did not evidence a level of income sufficient to meet the criteria set by Bean, the applicants provided no objectively verifiable rental or employment history, and neither was in fact employed in Cape Girardeau at the time of their application. The evidence does not establish that they were qualified applicants for rental of the unit nor does it establish that the reason for not renting to them was other than a legitimate non-discriminatory reason. The decision and order of the Commission is not supported by competent and substantial evidence on the whole record.

The judgment of the trial court is reversed. The decision and order of the Commission is reversed.

CRANE, C.J., and RHODES RUSSELL, J., concur.

---

2. Employees were authorized to approve applications which met Bean's requirements on their face. Because applicants' application did not, the application had to be referred to Bean for determination.