Carolena VAN DEN BERK, Appellant,

v.

**MISSOURI COMMISSION
ON HUMAN RIGHTS,
Respondent.**

No. ED 76175.

Missouri Court of Appeals,
Eastern District,
Division One.

July 25, 2000.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 24, 2000.

Application for Transfer Denied
Oct. 3, 2000.

Irl B. Baris, Jon M. Baris, Baris Law Firm, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Keith D. Halcomb, Asst. Atty. Gen., Jefferson City, for respondent.

## OPINION

JAMES R. DOWD, Judge.

Carolena van den Berk appeals from the judgment of the St. Louis City Circuit Court affirming the decision of the Missouri Commission on Human Rights, which found van den Berk in violation of the Missouri Human Rights Act, § 213.040 RSMo 1994. We affirm the judgment of the trial court.

## FACTS

In response to a newspaper advertisement, Donyale Austin called van den Berk to inquire about the availability of a two-bedroom apartment listed for rent at 6261 Clemens in a building owned by van den Berk. In a brief conversation, van den Berk indicated that she did not racially "mix" her properties because "black people and white people just don't get along well, living together." Upon Austin's declaration that she and her husband were African-American, van den Berk attempted to direct Austin's interest towards a one-bedroom apartment at 916 Eastgate in the same neighborhood. Mr. Austin overheard this conversation and heard his wife state, "I guess you're not going to rent to us because we are black." The Austins felt that any further attempt to negotiate with van den Berk concerning the Clemens apartment was futile because of van den Berk's comments and the fact that they were African-American.

As a result of the telephone conversation, the Austins filed a complaint against van den Berk with the Missouri Commission on Human Rights on December 6, 1994, alleging racial discrimination. The Commission investigated the complaint by conducting a series of housing tests designed to determine whether van den Berk's conduct constituted racial discrimination in violation of fair housing laws. In a housing test, the Commission tests for discrimination by comparing the treatment a landlord allegedly gave a complainant with the treatment given Commission "testers" [1] under similar circumstances.

Commission tester Dawkins, an African-American woman, called van den Berk on December 8, 1994 concerning the Clemens apartment. Van den Berk told Dawkins the apartment was no longer available but mentioned that the Eastgate apartment was available. Dawkins set up an appointment to see the Eastgate apartment. Also on December 8, Commission tester Martin–Lee, a white woman, telephoned van den Berk an hour after Dawkins's phone call and successfully set up an appointment to view the Clemens apartment the following day. On December 9, Martin–Lee met van den Berk and viewed the Clemens apartment. On the same day, Commission tester Foster, an African-American woman, kept the appointment Dawkins had made and met van den Berk at the Eastgate apartment. Foster informed van den Berk of her interest in a two-bedroom apartment. Van den Berk stated that the two-bedroom apartments she owned were unavailable to rent and never mentioned the Clemens property to Foster. Van den Berk offered the Clemens apartment to Martin–Lee on December 13 because van den Berk felt that Martin–Lee was the "best match" as a tenant.

Race was never mentioned during the communications between van den Berk and the testers. However, van den Berk offered no evidence refuting the testers' testimony concerning their meetings with

---

**1.** "Testers" are used here to refer to undercover Commission agents who investigate claims of housing discrimination by posing as potential customers to landlords.

van den Berk or explaining her disparate treatment of the testers. During her testimony, van den Berk could not recollect the phone conversation with Donyale Austin and simply denied ever considering race as a factor in a rental decision.

The Austins contend. that as a result of van den Berk's treatment, they suffered stress, depression and marital problems culminating in separation in June of 1996. Donyale Austin testified that she became increasingly depressed about living in a blatantly discriminatory city and hoped to move, which she eventually did. However, Mr. Austin's business dealings required him to remain in St. Louis. The Austins each testified to becoming more suspicious of dealing with white people, particularly white landlords. Mr. Austin testified that he felt van den Berk's discriminatory treatment contributed to his eventual separation from his wife.

*Commission findings*

The Commission found that Donyale Austin's account of the telephone conversation she had with van den Berk was consistent with the fact that in December 1994, all tenants living in the Clemens building were white, and all the tenants living in the Eastgate building were African–American. The Commission found that the housing testers' testimony corroborated Donyale Austin's testimony regarding van den Berk's discriminatory treatment. The Commission found that van den Berk's treatment was a significant cause in the Austins' separation.

*Procedural Background*

Carolena van den Berk appeals the judgment of the trial court affirming the Missouri Commission on Human Right's finding that her conduct constituted racial discrimination in violation of § 213.040 RSMo 1994.[2] The Commission found that van den Berk advised Donyale and Marlon Austin that she maintained racially segregated buildings, effectively refusing to negotiate with the Austins concerning rental

property van den Berk owns at 6261 Clemens in University City, Missouri. Therefore, any attempt by the Austins to rent the Clemens apartment became futile. The Commission ordered van den Berk to pay actual damages to the Austins for deprivation of civil rights, emotional distress and humiliation.

### STANDARD OF REVIEW

We review the findings and conclusions of the Commission to determine whether the decision is supported by substantial evidence, whether the decision was arbitrary, capricious or unreasonable, or whether the decision constituted an abuse of discretion. *Missouri Com'n on Human Rights v. Red Dragon Restaurant, Inc.*, 991 S.W.2d 161, 165 (Mo.App. W.D.1999). We construe the evidence and all reasonable inferences therefrom in the light most favorable to the Commission's decision. *Laclede Cab Co. v. Missouri Com'n on Human Rights,* 748 S.W.2d 390, 394 (Mo. App. E.D.1988). When the administrative decision involves an interpretation of law and an application of law to undisputed facts, we are not bound by the Commission's interpretation. *Red Dragon,* 991 S.W.2d at 165. If the Commission's decision is rational and reasonable, it binds this Court, even if it is not the only permissible decision. *Laclede,* 748 S.W.2d at 399–400. Finally, we defer to the Commission's ability to determine witness credibility. *Joplin v. Missouri Com'n on Human Rights,* 642 S.W.2d 370, 372 (Mo.App. S.D.1982).

### ANALYSIS

In her first point, van den Berk asserts that the Commission's finding of discrimination is an abuse of discretion because the Commission erroneously applied the law. Van den Berk claims that the Commission did not make a prima facie case of discrimination because the Austins never made an offer. to rent the Clemens apartment as required in a refus-

---

**2.** All later statutory references will be to RSMo 1994, unless otherwise indicated.

al-to-rent case. The Commission argues that van den Berk's conduct constitutes racial discrimination based on her refusal to negotiate, rather than a refusal to rent, because van den Berk attempted to steer the Austins away from the Clemens apartment.

*Missouri Human Rights Act*

The pivotal issue in any claim of unlawful discrimination is whether the challenged conduct was "motivated by an invidious purpose or whether it was based on a legitimate and rational consideration." *Midstate Oil Co., Inc. v. Missouri Com'n on Human Rights,* 679 S.W.2d 842, 845 (Mo.banc 1984). According to § 213.040.1(1), it is unlawful "... to refuse to negotiate for the sale or rental of, to deny or otherwise make unavailable, a dwelling to any person because of race...." Additionally, § 213.040.1(4) forbids an individual from representing to any person because of race that any dwelling is not available for rent. Therefore an individual seeking redress against housing discrimination need not prove a refusal to rent in order to prevail on a housing discrimination claim. *Joplin,* 642 S.W.2d at 373. Rather, a landlord's refusal to negotiate is a cognizable claim of discrimination. *Id.*

*Joplin v. Missouri Com'n on Human Rights* involved a landlord's refusal to negotiate with a prospective tenant based on race. *Joplin,* 642 S.W.2d at 373. The defendant landlord, after indicating to a prospective African–American tenant that certain property was not available for rent, rented the property to a white person later that same day. *Id.* at 372. The Southern District held that this conduct constituted a refusal to negotiate. *Id.* at 374. The Court noted that a landlord has a duty not to mislead an applicant as to housing availability. *Id.* at 373. Therefore, "the false statement of an owner that a dwelling is no longer available is a refusal to negotiate under discriminatory housing acts." *Id.*

*Joplin* appears to be the only Missouri case that directly treats a refusal to negotiate in the housing context. There is, however, a line of instructive federal cases that analyze that very question. Missouri courts look to federal decisions involving civil rights because of the similarities between applicable state and federal statutes.[3] *Midstate Oil,* 679 S.W.2d at 845–46 (involving employment discrimination statutes); *Wentz v. Industrial Automation,* 847 S.W.2d 877, 879 (Mo.App. E.D.1992) (involving an employment discrimination claim). Missouri cases depart from federal case law "where that law is not in accord with the thrust of our own state's statute." *Wentz,* 847 S.W.2d at 879.

The federal cases commonly employ the term "racial steering" to describe the discrimination practiced by van den Berk. *See, e.g., Havens Realty Corp. v. Coleman,* 455 U.S. 363, 102 S.Ct. 1114, 71 L.Ed.2d 214 (1982); *Cabrera,* 24 F.3d at 377; *Heights Community Congress v. Hilltop Realty, Inc.,* 774 F.2d 135 (6th Cir.1985). In *Havens,* the Supreme Court described racial steering as encouraging racial segregation in available housing by steering individuals seeking housing to buildings primarily occupied by members of the same race and away from buildings inhabited by members of other races. *Havens,* 455 U.S. at 363, n. 1, 102 S.Ct. 1114. In general, it is sufficient to prove discrimination by showing that a landlord affords a racial minority fewer housing opportunities than the racial majority, because justice prohibits a landlord from taking advantage of a "large array of [available] devices to hide their discrimination," including racial steering. *Cabrera,* 24 F.3d at 390. "If a statement or act would have a discriminatory effect and is made with the intent to steer, it violates" fair housing laws. *Heights Community,* 774 F.2d at 140.

---

**3.** In *Joplin,* this court recognized the similarities between § 213.105 RSMo 1979 and 42 U.S.C. § 3604 each governing housing discrimination.

*Burden-shifting analysis used to establish discrimination*

Both Missouri courts and federal courts use a burden-shifting methodology developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) to evaluate proof in cases brought under anti-discrimination laws. *Midstate Oil Co.*, 679 S.W.2d at 845. According to the methodology, the complainant has the initial burden of proving a prima facie case of discrimination. *Id.* In a housing discrimination lawsuit, the burden then shifts to the landlord to establish a legitimate, nondiscriminatory reason for the alleged discriminatory conduct. *Id.* If the landlord articulates such a reason, the burden shifts back to the complainant to show that the reason is pretextual. *Id.* The burden-shifting analysis is "used to progressively sharpen the inquiry into the question of whether intentional discrimination has occurred." *H.S. v. Board of Regents, Southeast Missouri State Univ.*, 967 S.W.2d 665, 670 (Mo.App. E.D.1998).

In housing discrimination cases, the type of evidence needed to establish a prima facie case of discrimination hinges upon the court's characterization of a landlord's conduct as a refusal to rent or a refusal to negotiate. *Joplin*, 642 S.W.2d at 373. A complainant alleging a refusal to rent must show that: (1) the complainant is protected by the statute; (2) a landlord refused to rent to complainant after complainant made a bona fide offer to rent; and (3) the complainant's race was a factor in the landlord's decision not to rent to complainant. *Bean v. Missouri Com'n on Human Rights*, 913 S.W.2d 419, 423 (Mo. App. E.D.1996). Therefore, proving discrimination based on a refusal to rent requires a bona fide offer made by a qualified applicant, but such an offer is not required for a refusal to negotiate. *Joplin*, 642 S.W.2d at 373. When a landlord refuses to negotiate with an interested applicant, any offer to rent becomes a futile effort.[4] *Id.* at 373–34.

Missouri law seeks to eradicate racial discrimination in housing. Therefore, the Missouri Human Rights Act specifically includes a refusal to negotiate as an unlawful discriminatory housing practice. "Racial steering" and "refusal to negotiate" are terms that characterize similar discriminatory practices as conduct that denies an individual a fair opportunity at available housing based on race.

Donyale Austin's testimony of van den Berk's conduct, as corroborated by the testimony of the Commission testers, evidences a classic pattern of racial steering as defined in *Havens, supra*. There was believable evidence that van den Berk told Donyale Austin that she did not "mix" her buildings because "black people and white people just don't get along well, living together," and then attempted to steer Austin's interest away from the Clemens apartment and toward the Eastgate apartment, which was occupied exclusively by African–Americans. Pursuant to *Havens*, *Cabrera*, and *Heights Community*, van den Berk clearly discriminated against the Austins by not offering them the same housing opportunities offered to whites as shown by the results of the Commission's housing tests.

The burden-shifting analysis used in refusal-to-rent cases limits the scope of conduct that violates an individual's civil rights by requiring a complainant to prove that an offer to rent was made and refused. Common sense dictates that when a landlord refuses to negotiate, an offer to rent becomes an exercise in futility. The purpose of the statute is frustrated if we require the victim of a landlord's refusal to negotiate to prove the elements of a refusal-to-rent case because a refusal to negotiate accomplishes the identical discriminatory result as a refusal to rent. Therefore,

---

4. In *Joplin*, the court stated that the African–American plaintiff could not be expected to ask further about the availability of a home for rent when the landlord indicated to her that the house had recently been rented. *Joplin*, 642 S.W.2d at 374.

a prospective tenant faced with a landlord's refusal to negotiate does not have to make an offer to rent in order to raise a housing discrimination claim.

Accordingly, we hold that the Commission established a prima facie case of discrimination against van den Berk for her refusal to negotiate with the Austins. There was sufficient evidence for the Commission to conclude that the Austins are (1) members of a protected class, (2) who suffered adverse treatment based on van den Berk's invidious discriminatory conduct, and (3) the adverse treatment resulted because of the Austin's race. Pursuant to *McDonnell Douglas Corp., supra*, the burden then shifted to van den Berk to establish a legitimate, nondiscriminatory reason for the alleged discriminatory conduct. She failed to articulate any non-discriminatory reason for her actions. We need not, therefore, reach the question of whether the non-discriminatory reason was pretextual.

The evidence viewed in a light most favorable to the Commission's decision clearly allows a conclusion that van den Berk discriminated against the Austins in violation of the Missouri Human Rights Act, § 213.040. The Commission correctly applied the law to the facts and found that van den Berk engaged in a form of discrimination prohibited by § 213.040. Therefore, the decision that van den Berk's treatment of the Austins constituted racial discrimination was not an abuse of discretion. Point denied.

■ Van den Berk, in a separate point, also contends that the Commission's decision was not supported by competent and substantial evidence. She argues that the Commission's test was inadequate and did not corroborate the Austins' testimony, and that there was no evidence proving discrimination. We find the Commission's test to be reliable and consistent with the other evidence presented in the case. The test and the Austins' testimony provide the competent and substantial evidence neces-

sary to support the Commission's decision. Point denied.

*Damages*

The Commission ordered van den Berk to pay a total of $8,000 in damages to Donyale and Marlon Austin. Donyale was awarded $5,000 in actual damages for emotional distress and humiliation and $1,000 for deprivation of her civil rights. Marlon was awarded $1,000 in actual damages for emotional distress and humiliation and $1,000 for deprivation of his civil rights.

■ In her third point, van den Berk claims that the evidence failed to justify an award of damages, and the Commission erroneously applied the law in determining the amount of damages. We disagree. The Missouri Human Rights Act authorizes the Missouri Commission on Human Rights "to take such affirmative action [that] will implement the purpose of [the Human Rights Act]," including an award of actual damages. § 213.075.11(1) RSMo 1994; *Red Dragon*, 991 S.W.2d at 171. Accordingly, actual damages may be awarded in a housing discrimination case for deprivation of civil rights, emotional distress, and humiliation. *Joplin*, 642 S.W.2d at 375; *Biggs*, 830 S.W.2d at 516; *Red Dragon*, 991 S.W.2d at 171. A damage award is designed to fulfill the remedial purposes of the civil rights laws and compensate a wronged person for the loss or injury suffered. *Red Dragon*, 991 S.W.2d at 170–71. Damages may be established by testimony or inferred from the circumstances. *Id.* Courts should consider the severity of the damage suffered in determining the amount of damages. *Id.*

■ In most litigation, there is a large range between the damage extremes of inadequacy and excessiveness. *Kenton v. Hyatt Hotels Corp.*, 693 S.W.2d 83, 98 (Mo.banc 1985). Intangible damages, such as pain, suffering, embarrassment, emotional distress, and humiliation do not lend themselves to precise calculation. *Id.*

**414** ■

Each case requires individualized contemplation and consideration by the trier of fact. *Id.* Fair and reasonable compensation is the ultimate goal in awarding damages. *Id.*

■ The Commission found that the Austins' testimony concerning the extent of the damage they suffered as a result of van den Berk's discriminatory conduct was credible. Van den Berk discriminated against the Austins in a subtle and insidious manner by refusing to negotiate with them concerning the Clemens apartment and steering them towards the Eastgate apartment. The Austins' testimony, especially Donyale's, established that they have endured the type of mental anguish and personal strife that a discrimination claim is designed to mend. The unrefuted evidence shows that the Austins experienced stress and depression. The Austins' marital separation and Donyale's move away from St. Louis evidence steps taken to deal with the emotional turmoil they suffered. The evidence shows that the Austins now feel apprehensive in their associations with whites. In addition to alleviating the emotional distress and humiliation experienced by the victim of racial discrimination, an award of actual damages for a civil rights violation also serves to deter future discrimination.

We hold that the Commission's decision to award damages is supported by competent and substantial evidence and is neither arbitrary, capricious, nor unreasonable. The Commission correctly applied the law in awarding damages. Damages for emotional distress, humiliation, and deprivation of civil rights are appropriate forms of compensation in this case. We pay due regard to the Commission's opportunity to evaluate the credibility of the witnesses. The Commission credited the Austins' testimony concerning damages. Therefore, the amount awarded is justified in order to promote the remedial purposes of the Missouri Human Rights Act and to compensate the Austins for damages actually suffered. Point denied.

The judgment of the trial court is affirmed.

GARY M. GAERTNER, P.J., concurs.

PAUL J. SIMON, J., concurs.