Colleen Dolan, J.
Linda Vermett ("Ms. Vermett"), Sally Dickherber ("Ms. Dickherber"), and Villa Roma Apartments (collectively, "Appellants") appeal the order and judgment of the Circuit Court of St. Charles County denying their petition for judicial review of the administrative ruling and order of the Missouri Commission on Human Rights (the "MCHR") finding Appellants had violated § 213.040.1(1).[1] After holding a public hearing, the MCHR concluded that Appellants had refused to rent to Jacqueline Henderson ("Mrs. Henderson") and Scott Henderson ("Mr. Henderson") (collectively, "Respondents") because of Mrs. Henderson's disability that confined her to a wheelchair. The MCHR ordered Appellants to pay actual damages to Respondents in the amount of $5,000 and to pay a civil penalty in the amount of $2,000.
Appellants offer two points on appeal. In Appellants' first point, they argue that the MCHR's decision and order was not supported by competent and substantial evidence upon the whole record. Specifically, Appellants contend that they did not violate § 213.040(1) because they did not refuse *297 to rent or negotiate a rental agreement with Respondents and that Mrs. Henderson's disability was not a contributing factor in their decision. In Appellants' second point, they assert that the MCHR's determination of damages was also not supported by competent and substantial evidence upon the whole record, as the MCHR's calculations of actual damages were incorrect and Appellants' attempts to accommodate Respondents should have been given more weight in the assessment of damages.
We affirm the judgment of the circuit court.
I. Factual and Procedural Background
The MCHR hearing examiner who presided over the administrative hearing in this case made the following findings that were adopted by the MCHR in its decision and order. In early 2010, Respondents searched for an apartment to rent that was closer to Mrs. Henderson's work and Mr. Henderson's school. Mrs. Henderson suffers lower-body paralysis due to a severance of her spinal cord that resulted from an accident in 1994. Mrs. Henderson is unable to walk, is confined to a wheelchair, and has several limitations to major activities in her daily life; it is undisputed by the parties that Mrs. Henderson's condition meets the definition of "disability" as defined in § 213.010(5) and that both Respondents are protected under § 213.040.
Seeking an apartment at the Villa Roma apartment complex, Respondents visited Villa Roma on February 10, 2010, after they had determined it could potentially accommodate Mrs. Henderson's disability. Ms. Vermett, the manager of Villa Roma, showed Respondents the Villa Roma two-bedroom display apartment (because there were no available apartments on the first floor and the one-bedroom model could only be accessed using stairs); Mrs. Henderson was able to easily navigate the display unit in her wheelchair. Ms. Vermett relayed to Respondents that a two-bedroom apartment on the first floor would become available in April 2010.
Ms. Vermett then took Respondents to the exterior of Building 1915, opened the security door to Building 1915, and allowed Mr. Henderson to lift Mrs. Henderson over the one-step threshold (that was three to four inches high) into the building. Ms. Vermett explained that she could not show Respondents the ground-floor two-bedroom apartment in this building (Unit 1915C) because it had not yet been cleaned. Ms. Vermett then attempted to show Respondents another unit in a different building, but Respondents declined to view the apartment because it required using stairs to access it. Before departing, Respondents told Ms. Vermett that they would need a ramp to be built in order to access the security door (that had a one-step threshold equaling three to four inches) at Building 1915; Ms. Vermett told Respondents that she would need to speak to Ms. Dickherber, Villa Roma's owner.
Without any reply from Appellants concerning the ramp, Respondents returned to Villa Roma on February 16, 2010, when they completed and signed a lease application, paid a $25 application fee, and paid a $100 security deposit. Respondents believed the security deposit was for Unit 1915C-the ground-floor unit where Ms. Vermett had led them six days earlier and indicated that the apartment would be available in April 2010. Respondents claimed that after they had paid the application fee and security deposit, Ms. Vermett informed Respondents that it would not be possible to build the ramp for Building 1915, which obviously made it impractical for Respondents to rent Unit 1915C. Ms. Vermett's statements about not *298 building the ramp led to a heated exchange between Ms. Vermett and Respondents that left both Respondents feeling shocked, angry, and humiliated.
In a letter addressed to Villa Roma's management office sent February 18, 2010, Mrs. Henderson formally requested to have a ramp to Building 1915 installed at Respondents' expense. This letter was returned to Respondents as "refused." Mrs. Henderson sent a second similar letter to Villa Roma's Post Office Box address in St. Charles on March 2, 2010; Respondents did not receive a response to this letter. Subsequently, Villa Roma suggested that Respondents could use the ground-level sliding glass door as a means of entrance into Unit 1915C instead of the primary entrance, which would thereby negate the need to build a ramp.[2] However, the entryway through the sliding glass door was too narrow for Mrs. Henderson's wheelchair and it was not possible to lock the sliding glass door from the outside (meaning that the apartment would remain unlocked if Mrs. Henderson chose to leave the apartment when Mr. Henderson was not there). Unit 1915C was rented to another individual on April 23, 2010.
Respondents filed a complaint with the MCHR on March 30, 2010.[3] The Attorney General, on behalf of the MCHR, filed an amended complaint against Appellants on February 9, 2012. After a public hearing held on July 6, 2012, the MCHR issued its decision and order adopting the Findings of Fact and Conclusions of Law of the MCHR hearing examiner. Specifically, the MCHR concluded that Respondents had established a prima facie case that they were protected by § 213.040, Appellants had refused to rent to them after they had made a bona fide offer to rent, and Mrs. Henderson's disability was a factor in Appellants' refusal to rent to Respondents. Further, the MCHR concluded that Respondents had met their burden to prove Appellants' stated non-discriminatory reason to not rent to Respondents (that Unit 1915C was unavailable) was pretextual. Concluding that Appellants had violated § 213.040.1(1), the MCHR ordered Appellants to pay actual damages to Respondents, pursuant to § 213.075.11(1), in the amount of $3,000 for deprivation of Respondents' civil rights and $2,000 for emotional distress and humiliation; the MCHR also ordered Appellants to pay a civil penalty of $2,000 pursuant to § 213.075.11(2). Appellants filed their petition for judicial review of the MCHR's decision and order on October 13, 2014; that petition was denied by the circuit court.
This appeal follows.
II. Standard of Review
This Court reviews the decision of the administrative agency, not the circuit court. Coffer v. Wasson-Hunt, 281 S.W.3d 308, 310 (Mo. banc 2009). Our review extends to a determination of whether the administrative agency's action (1) is in violation of constitutional provisions; (2) is in excess of the statutory authority or jurisdiction of the agency; (3) is unsupported by competent and substantial evidence upon the whole record; (4) is, for any other reason, unauthorized by law; (5) is made upon unlawful procedure or without a fair trial; (6) is arbitrary, capricious or unreasonable; or (7) involves an abuse of discretion. § 536.140. We review the *299 record before the administrative agency in its entirety, not simply the evidence that supports the agency's decision. Lake Ozark-Osage Beach Joint Sewer Bd. v. Missouri Dep't of Nat. Res., 491 S.W.3d 667, 672 (Mo. App. W.D. 2016). "Although the commission's decision is afforded substantial deference, this Court must still 'examine the whole record to determine if it contains sufficient competent and substantial evidence to support the award, i.e., whether the award is contrary to the overwhelming weight of the evidence.' " Malam v. State, Dep't of Corr. , 492 S.W.3d 926, 928 (Mo. banc 2016) (quoting Hampton v. Big Boy Steel Erection , 121 S.W.3d 220, 223 (Mo. banc 2003) ). Further, we defer to the administrative agency's ability to determine witness credibility. Van Den Berk v. Missouri Com'n on Human Rights, 26 S.W.3d 406, 410 (Mo. App. E.D. 2000). We review questions of law de novo. Lake Ozark-Osage Beach Joint Sewer Bd., 491 S.W.3d at 672.
III. Discussion
Point I
Appellants argue in their first point that the MCHR's decision and order concluding that they violated § 213.040.1(1) was unsupported by competent and substantial evidence upon the whole record. Specifically, Appellants assert that there was not competent and substantial evidence for the MCHR to conclude that Appellants violated § 213.040.1(1) by discriminating against Respondents in refusing to rent or refusing to negotiate to rent after Respondents had made a bona fide offer, and that Mrs. Henderson's disability was not a contributing factor in their decision not to rent to Respondents. Rather, Appellants maintain that Unit 1915C was simply unavailable for rent.
Analysis
Section 213.040.1(1) states that "[i]t shall be an unlawful housing practice ... [t]o refuse to sell or rent after the making of a bona fide offer, to refuse to negotiate for the sale or rental of, to deny or otherwise make unavailable, a dwelling to any person because of ... disability..." Like federal courts, Missouri courts use the burden-shifting analysis developed in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) to evaluate proof in discrimination cases where disparate treatment is alleged. Van Den Berk, 26 S.W.3d at 412 ; Hollis v. Chestnut Bend Homeowners Ass'n, 760 F.3d 531, 538-39 (6th Cir. 2014) (explaining that the McDonnell Douglas analysis is an intent-divining test applicable to housing discrimination cases involving claims of disparate treatment).
The McDonnell Douglas test first requires that the complainant meet an initial burden of proving a prima facie case of discrimination. Van Den Berk, 26 S.W.3d at 412. To meet this burden, a complainant alleging refusal to rent must show that (1) he is protected by the statute; (2) a landlord or property owner refused to rent to the complainant after the complainant made a bona fide offer to rent; and (3) the complainant's disability was a factor in the landlord or owner's decision not to rent to the complainant. Id. If the complainant meets his burden of proving a prima facie case of discrimination, the burden then shifts to the landlord or owner to establish a legitimate, non-discriminatory reason for the alleged discriminatory action. Id. And if the landlord or owner successfully articulates a non-discriminatory reason, the burden shifts back to the complainant to show that the proposed reason is pretextual. Id.
We first note that the MCHR correctly chose to apply the *300 McDonnell Douglas test in its administrative decision in this case. Having reviewed the whole record, we find that the MCHR's conclusion that Appellants violated § 213.040.1(1) is supported by competent and substantial evidence. Here, it is clear and undisputed that Respondents were protected by § 213.040.1(1)[4] and Respondents made a bona fide offer to rent from Appellants. It is also clear that Respondents met the third part of their initial prima facie burden to show that Mrs. Henderson's disability was a factor in Appellants' decision not to rent to Respondents. Specifically, Respondents had alleged that Appellants refused to rent Unit 1915C, where a ramp could be built, to Respondents because they were "too much trouble." These allegations are supported by Respondents' testimony regarding their visits to Villa Roma and interactions with Ms. Vermett, Respondents' rental application, and Mrs. Henderson's letters sent to Appellants formally requesting a ramp be built to make Unit 1915C wheelchair-accessible and Appellants' subsequent refusal of and non- answers to those letters. Because Respondents' allegations are supported by multiple pieces of evidence in the record, they are sufficient to meet the third part of Respondents' prima facie burden. Respondents had therefore successfully established a prima facie case of discrimination.
In response to these allegations, Appellants suggested that they refused to rent to Respondents for the non-discriminatory reason that Unit 1915C was unavailable at the time Respondents applied and would still be unavailable at their requested move-in dates.[5] Respondents, in turn, claimed that this reason was pretextual because Unit 1915C was the subject of the negotiations throughout the application process, Respondents proposed building a ramp leading to the security door of Building 1915 during their visits on February 10, 2010 and February 16, 2010, and Respondents had made it clear that their move-in date was flexible.
During the proceedings before the MCHR, Respondents and Appellants presented two different sets of facts: Respondents testified that, during their visit to Villa Roma on February 10, 2010, Ms. Vermett showed both Respondents inside the security door of Building 1915 and indicated that Unit 1915C would be the apartment they would rent if Respondents chose to live at Villa Roma; Appellants testified that Ms. Vermett did not show Respondents inside the security door of Building 1915, that Ms. Vermett did not discuss with Respondents the possibility of building a ramp to any apartment until after Respondents had filled out their rental application on February 16, 2010, and that Ms. Vermett would not have indicated which unit Respondents would potentially receive, as it was against Villa Roma's policies regarding prospective renters.
After hearing testimony from both Respondents and Appellants, the MCHR found that the interactions between Respondents and Ms. Vermett on February 10, 2010 and February 16, 2010, demonstrated that their negotiations centered on Unit 1915C (as that unit was discussed on those dates), Ms. Vermett took Respondents to the door of Unit 1915C, and the parties had discussed a ramp leading to the security door of Building 1915 during *301 Respondents' February 10, 2010 visit. Considering the contradictory testimony of Respondents and Ms. Vermett regarding discussions about Unit 1915C specifically and about building a ramp for that unit, it is clear that the MCHR believed the testimony of Respondents over that of Ms. Vermett. Because the MCHR is in a better position to evaluate and weigh testimony, we defer to the administrative agency's ability to determine witness credibility. Van Den Berk, 26 S.W.3d at 410.
Examining the entire record, the MCHR's conclusion that Appellants' proposed non-discriminatory reason (that Unit 1915C was unavailable) was pretextual is permissible. Because we give deference to the MCHR's findings and to its evaluations of witness credibility, we accept the MCHR's determination that Respondents' testimony was more persuasive or believable than Ms. Vermett's regarding discussions of Unit 1915C and the building of the ramp. Hypothetically, if a wheelchair-bound person applies to rent an apartment at a complex with only some units that can be made wheelchair-accessible, the applicant both logically and necessarily would be applying for one of the apartments that could be made wheelchair-accessible. In this situation, it is both believable and predictable that Respondents would make an immediate request for any apartment they would rent to have a wheelchair ramp, as Mrs. Henderson is confined to a wheelchair. According to Appellants, the only available ground-floor apartment at the time Respondents applied at Villa Roma was Unit 1883C-a unit with a primary entrance that can only be reached using multiple stairs and for which Ms. Dickherber herself admitted during her testimony that a ramp could not be built. This supports Respondents' testimony that Unit 1915C was the focus of their negotiations before applying at Villa Roma and that Respondents believed they were applying for that specific apartment because Ms. Vermett had allegedly shown them to the door of Unit 1915C during their February 10, 2010 visit. This also supports that Ms. Vermett knew Respondents were applying specifically for Unit 1915C.
Additionally, during her testimony before the MCHR, Ms. Vermett testified that she had met with Mrs. Henderson in the leasing office many times before Respondents filled out their application on February 16, 2010, but she also testified that she did not remember meeting Mr. Henderson before that date. When asked how she met with Mrs. Henderson in her office despite Mrs. Henderson being alone and the three-inch step leading to the entryway of the leasing office, Ms. Vermett answered, "I can't explain that to you. I told you I don't know if her husband was outside or not. I don't remember meeting him." Further, despite Respondents' obvious interest in renting Unit 1915C and stating that their move-in date was flexible, Appellants did not attempt to rent Unit 1915C to Respondents after the previous lease had ended on March 31, 2010; that unit was rented to another individual on April 23, 2010.
At the hearing before the MCHR, Appellants stressed that they had no time to address Respondents' requests to build a ramp at Unit 1915C because that unit was unavailable when Respondents applied at Villa Roma and because a complaint with the MCHR was filed at the beginning of March 2010, shortly after Respondents had applied. The MCHR found that Respondents did not file their complaint with the MCHR until April 2, 2010; upon review of the record, we find that the complaint was actually filed on March 30, 2010. Regardless, Mrs. Henderson sent two letters to Appellants requesting that a ramp be built before Respondents filed their complaint. Appellants' argument that they did *302 not have time to address Respondents' request is therefore unpersuasive, as Appellants had more than a month to reply to Respondents after their February 16, 2010 visit when it is uncontested that Appellants knew Respondents would require a ramp. And while the previous lease did not end until March 31, 2010, Appellants did not offer or attempt to negotiate with Respondents regarding Unit 1915C either before or after Appellants filed their complaint, and instead chose to rent that apartment to another individual on April 23, 2010.
Because of the significant inconsistencies in Ms. Vermett's testimony, the fact that Mrs. Henderson clearly would have required a wheelchair ramp at any apartment Respondents would have rented, Mrs. Henderson's February and March 2010 letters formally requesting a ramp be built to Building 1915 at Respondents' expense, and because Appellants made no actual attempt to accommodate Respondents, we find that the MCHR's conclusion that Appellants' proposed non-discriminatory reason (that Unit 1915C was unavailable) was pretextual is supported by competent and substantial evidence.
After evaluating the whole record in this case, the findings and conclusions made by the MCHR were permissible, as Respondents adequately presented a prima facie case of discrimination and rebutted Appellants' proposed non-discriminatory reason by showing that it was pretextual. We therefore find that there is competent and substantial evidence upon the whole record to support the MCHR's conclusion that Appellants violated § 213.040.1(1). Point I is denied.
Point II
In Appellants' second point, they argue that the MCHR's determination of damages was not supported by competent and substantial evidence upon the whole record. Specifically, Appellants assert that the awarded damages do not equal Respondents' actual damages and that the damages awarded should have been reduced because of Appellants' efforts to accommodate Respondents. Appellants also contend that their conduct was not so egregious as to trigger the public interest provision permitting the MCHR to order Appellants to pay a civil penalty of up to $2,000.
Because Appellants are appealing both the actual damages awarded and the civil penalty ordered by the MCHR, we will address both of those issues individually.
Analysis
a. Actual Damages for Deprivation of Civil Rights, Emotional Distress, and Humiliation
Section 213.075.11(1) permits the MCHR to require a respondent "to take such affirmative action, as in the panel's judgment will implement the purposes of [the Missouri Human Rights Act], including ... payment of actual damages ..." when it finds that a respondent has engaged in an unlawful discriminatory practice. While there is a dearth of precedential cases involving housing discrimination within the last 20 years, Missouri courts have held that actual damages may be awarded in housing discrimination cases for deprivation of civil rights, emotional distress, and humiliation. Van Den Berk, 26 S.W.3d at 413 ; Joplin v. Missouri Com'n on Human Rights, 642 S.W.2d 370, 375 (Mo. App. S.D. 1982) ; Biggs v. Missouri Com'n on Human Rights, 830 S.W.2d 512, 516 (Mo. App. E.D. 1992). "A damage award is designed to fulfill the remedial purposes of the civil rights laws and compensate a wronged person for the loss or injury suffered." Van Den Berk, 26 S.W.3d at 413. "The severity of the harm suffered by the plaintiff due to the deprivation of *303 his or her civil rights ... should be used to determine the amount of the damages." State ex rel. Sir v. Gateway Taxi Mgmt. Co., 400 S.W.3d 478, 491 (Mo. App. E.D. 2013) (quoting Missouri Comm'n on Human Rights v. Red Dragon Rest., Inc., 991 S.W.2d 161, 171 (Mo. App. W.D. 1999) ).
Damages may be established through testimony or inferred from the circumstances, and courts should consider the extent of the damage suffered in determining an appropriate amount of damages. Van Den Berk, 26 S.W.3d at 413. Understandably, "[i]ntangible damages, such as pain, suffering, embarrassment, emotional distress, and humiliation do not lend themselves to precise calculation." Id. Because fair and reasonable compensation is the ultimate goal in awarding damages, each case requires individualized consideration and treatment by the trier of fact. Id. at 414.
In this case, the MCHR awarded actual damages to Respondents for a deprivation of civil rights, in the amount of $3,000, and for emotional distress and humiliation, in the amount of $2,000. The MCHR did so after concluding that Appellants had infringed upon Respondents' civil rights by refusing to rent to them based on Mrs. Henderson's disability and because of the emotional effect the events that constituted said violation had on Respondents. As we have denied Appellants' Point I above and find that competent and substantial evidence upon the whole record supports the MCHR's conclusion that Appellants violated § 213.040.1(1), we also affirm the actual damages awarded for deprivation of civil rights. The MCHR's award of $3,000 for deprivation of Respondents' civil rights demonstrates that it appropriately gave individualized consideration to the intangible injury in this case. See Gateway Taxi Mgmt. Co., 400 S.W.3d at 492. While actual damages cannot be precisely calculated because of the intangible nature of the harm here, see Van Den Berk, 26 S.W.3d at 413, the Commission's award is not excessive and adequately compensated Respondents after their civil rights were violated when they were denied the opportunity to rent because of Mrs. Henderson's disability.
Additionally, it is clear that the MCHR considered and believed Respondents' testimony that they felt shocked, angry, and humiliated after their visit to Villa Roma on February 16, 2010, and where there is evidence that Ms. Vermett told Respondents that they "were too much trouble." As the MCHR gave weight to this testimony and because we defer to the MCHR's determinations of witness credibility, we affirm the MCHR's finding that Respondents suffered emotional distress and humiliation after their interactions with Ms. Vermett.
Appellants further argue that any damages that were awarded should have been reduced because of their efforts to otherwise accommodate Respondents. We, and the MCHR, might take this into account if not for the fact that each of these "accommodations" are essentially meaningless. Appellants' suggestion that Respondents use the sliding glass door to access Unit 1915C was implausible because Mrs. Henderson's wheelchair would not fit and this option would not allow Respondents full use and enjoyment of the apartment; the other apartment (Unit 1883C) Appellants offered to Respondents required the use of stairs and could not be made wheelchair accessible; Appellants offered to put Respondents on a waitlist for another apartment that could be made wheelchair accessible (despite Unit 1915C becoming available after March 31, 2010); and Appellants offered Respondents a wheelchair-accessible apartment at their St. Charles *304 location, but this obviously defeated the purpose of Respondents looking for an apartment that was closer to Mrs. Henderson's work and Mr. Henderson's school. As Appellants violated Respondents' civil rights and because the MCHR gave significant weight to Respondents' testimony regarding their emotional reactions to such violation, we find that there is competent and substantial evidence to support the MCHR's award of actual damages for deprivation of civil rights and for emotional distress and humiliation.
b. Civil Penalty
Section 213.075.11(2) allows the MCHR to "assess a civil penalty against the respondent, for purposes of vindicating the public interest ... [i]n an amount not exceeding two thousand dollars if the respondent has not been adjudged to have violated one or more of the sections enumerated in subdivision (2) of this subsection within five years of the date of the filing of the complaint" when the respondent has engaged in an unlawful discriminatory practice.
As we have already found that Appellants engaged in an unlawful discriminatory practice, we need not discuss this issue in depth. Under § 213.075.11(2), the MCHR may access a civil penalty of up to $2,000 in this case "for purposes of vindicating the public interest." While the MCHR does not give reasoning for why it concluded the maximum civil penalty was appropriate in this situation, we recognize that "[i]n most litigation, there is a large range between the damage extremes of inadequacy and excessiveness." Van Den Berk, 26 S.W.3d at 413. We find that, despite the MCHR penalizing Appellants the maximum amount, the penalty ordered here falls within the acceptable range because the MCHR likely was attempting to discourage Appellants (and others offering housing for rent or sale) from engaging in future discriminatory practices. This indeed vindicates the public interest, as it was ordered to prevent potential future housing discrimination against people with disabilities.
Because we find that the MCHR's conclusion that Appellants violated § 213.040.1(1) is supported by competent and substantial evidence upon the whole record, and because § 213.075.11(2) permits the MCHR to assess a civil penalty up to $2,000 under those circumstances, we find that there is competent and substantial evidence to support the MCHR's order for Appellants to pay a $2,000 civil penalty.
Point II is denied.
IV. Conclusion
We find that there is competent and substantial evidence upon the whole record to support the MCHR's findings and conclusions that Appellants violated § 213.040.1(1), as Respondents adequately presented a prima facie case of discrimination and rebutted Appellants' proposed non-discriminatory reason by showing that it was pretextual. We also find that there is competent and substantial evidence upon the whole record to support the MCHR's award of actual damages in the amount of $5,000 for the deprivation of civil rights and for emotional distress and humiliation and to support the MCHR's order for Appellants to pay a civil penalty in the amount of $2,000. We affirm the judgment of the circuit court.
James M. Dowd, C. J., concurs.
Lisa S. Van Amburg, J., concurs.

All statutory references are to RSMo Cum. Supp. 2010 unless stated otherwise.

Appellants claim this suggestion was made in reference to Unit 1883C, not Unit 1915C.

The MCHR found that Respondents filed their complaint on April 2, 2010, but upon review of the whole record, we find that the complaint was actually filed on March 30, 2010.

Mrs. Henderson's lower-body paralysis, which was caused by the severance of her spinal cord and forces her to be confined to a wheelchair, meets the definition of "disability" as defined in § 213.010(5).

On Respondents' rental application, they stated their preferred move-in dates were mid-March 2010.