

# In the
# Missouri Court of Appeals
# Western District

CLAUDETTE CLEMENT EMILE, )
)
Appellant, )
)
v. )
)
TRIUMPH FOODS, LLC, )
)
Respondent. )

**WD87159**
**OPINION FILED:**
**MAY 6, 2025**

**Appeal from the Circuit Court of Buchanan County, Missouri**
**The Honorable Kate Holly Schaefer, Judge**

**Before Special Division: Anthony Rex Gabbert, Chief Judge, Presiding,**
**Alok Ahuja, Judge, Karen L. Krauser, Special Judge**

Claudette Clement Emile ("Emile") appeals the circuit court's Judgment granting Triumph Foods, LLC's ("Triumph") motion for summary judgment on all counts in Emile's "First Amended Petition for Damages" which alleged race discrimination and hostile work environment (Count I), national origin and/or color discrimination and hostile work environment (Count II), retaliation and hostile work environment (Count III), disability discrimination and hostile work environment (Count IV), and workers' compensation retaliation and hostile work environment (Count V). On appeal, Emile contends the circuit court erred in granting summary judgment as to Counts I-IV, arguing that genuine issues of material fact exist as to those claims. We agree, and reverse and remand to the trial court.

## Background and Procedural Information

On August 12, 2022, Emile filed a "Petition for Damages" alleging that Triumph discriminated and retaliated against her in violation of the Missouri Human Rights Act (MHRA). On February 20, 2023, Emile filed a "First Amended Petition for Damages" which included the five counts stated above.

Emile's petition alleged that she began her employment with Triumph in the summer of 2014 and is a Haitian-American female. Creole is her first language and she speaks little English. She is often shown and asked to sign documents at Triumph that she cannot read or understand. Other employees at Triumph speak Creole and were available to act as an interpreter for Emile, but Triumph did not always allow an interpreter to be present.

In June 2017, Triumph refused Emile a restroom break, which caused Emile to urinate on herself. This incident caused Emile to suffer from bladder issues which required corrective surgery. Emile complained at the time of unfair treatment, with no reprieve.

Emile alleged that she continues to suffer from bladder issues, which may require another surgery. Despite being advised by Emile's doctor of the need for accommodations, Emile's last supervisor would not allow Emile to take appropriate restroom breaks. Emile was required to receive specific permission from her supervisor to use the restroom, while other non-minority and non-disabled employees were not.

Coworkers attempted to step in and cover for Emile while she went to the restroom, but those employees were reprimanded for coming to her aid.

On August 10, 2021, Emile was denied a restroom break and urinated on herself. On September 17, 2021, Emile suffered a work-related injury but was denied workers' compensation benefits, including the payment of medical bills and the payment of Temporary Total Disability benefits.

On November 18, 2021, Emile filed a Charge of Discrimination with the Missouri Commission on Human Rights. She alleged she was being treated unfairly by Triumph because of her race, national origin, color, and disability. Further, that she had been retaliated against for exercising her rights under the MHRA. She alleged that the unfair treatment had been continuous since June 2017.

On May 18, 2022, Emile was suffering from an upset stomach and required multiple trips to the bathroom. During one trip, her supervisor stopped her and directed her to return to work. Emile explained the urgent need to use the restroom, but Emile's supervisor continually said, "No," and wanted to take Emile to Human Resources (HR). Emile was required to stand and wait while the supervisor attempted to get an employee to translate. This took more time than would have been necessary for Emile to use the restroom. The supervisor told the coworker translating that Emile did not respect the supervisor because she disobeyed the supervisor's orders. Because of the delay, Emile defecated on herself.

The following day, Emile was taken to HR. Emile was told she could use the bathroom but that she had to ask the Team Lead. No one addressed what happened the previous day.

On June 16, 2022, Emile filed a second Charge of Discrimination with the Missouri Commission on Human Rights, alleging she defecated on herself after her request to use the bathroom was delayed. Emile alleged that other Triumph employees were able to sign in and sign out as needed without asking for permission from the supervisor, but she must ask the supervisor directly for permission. She alleged she was being treated unfairly because of her race, national origin, color, and disability. Further, that she had been retaliated against for exercising her rights under the Missouri Human Rights Act, and the unfair treatment had been continuous since 2017.

Emile's petition further alleged that, because of Triumph's repeated refusal to accommodate Emile's needs, and the continued retaliation against her for complaining about her needs, the conditions of Emile's employment became so intolerable that a reasonable person would not remain in that position. As such, Emile was constructively discharged from her position on November 8, 2022.

Triumph filed its answer to Emile's first amended petition on March 16, 2023. On December 6, 2023, Triumph moved for summary judgment on all counts of Emile's petition.[1] Triumph argued that Emile's lawsuit was not timely filed as to some of her

---

[1]As Emile does not dispute the court's ruling as to Count V, we need not discuss Emile's workers' compensation retaliation claim.

claims. Further, even if Emile's lawsuit was timely filed, only events occurring after May 22, 2021, could be considered pursuant to Section 213.075.1,[2] and pursuant to Section 213.111.1, under no circumstance could any event earlier than August 23, 2020, be considered.

Triumph also argued that Emile never filed a Charge of Discrimination claiming constructive discharge and failed to exhaust administrative remedies on that issue. Further, the record proved Emile was not constructively discharged because she was on company approved FMLA leave at the time she resigned, and her deposition testimony shows that she resigned for reasons other than discrimination, retaliation, or harassment.

Triumph contended that Emile's claims are based on "three discrete events" that occurred in June 2017, August 2021, and May 2022, and involved Emile urinating/defecating on herself for alleged denied/delayed bathroom breaks. Triumph argued that these discrete events are not actionable adverse employment actions under the MHRA, not sufficient as a matter of law to form the basis of any type of discrimination or hostile work environment claim, and two of the incidents were untimely under the MHRA's statute of limitations. Further, the May 2022 incident occurred due to something Emile ate and not any alleged disability. Triumph also argued that Emile's assertion that she was retaliated against for requesting breaks beyond those provided in

---

[2]All statutory references are to the Revised Statutes of Missouri, as updated through 2021, unless otherwise noted.

the union contract is not a viable claim, because the mere request for a disability accommodation is not a protected activity.

On March 19, 2024, the circuit court sustained Triumph's motion for summary judgment as to all counts in Emile's petition, and entered Judgment in favor of Triumph and against Emile. This appeal follows.

**Standard of Review**

The standard of review for an appeal challenging the grant of a motion for summary judgment is *de novo*. *Weeks v. St. Louis County*, 696 S.W.3d 333, 338 (Mo. banc 2024). We give no deference to the circuit court's decision, and use the same criteria the circuit court should have employed in determining whether summary judgment was proper. *Id.* We review the record in the light most favorable to the party against whom judgment was entered, and give that party the benefit of all inferences which may reasonably be drawn from the record. *Id.* Summary judgment is proper where the moving party demonstrates there is no genuine dispute as to the material facts, and a right to judgment as a matter of law. *Id.* "A genuine issue exists when the record contains competent materials that evidence two plausible, but contradictory, accounts of the essential facts." *Doe 122 v. Marianist Province of the United States*, 620 S.W.3d 73, 76 (Mo. banc 2021).

> A 'defending party' may establish a right to summary judgment by showing: (1) facts negating any one of the claimant's elements; (2) that the party opposing the motion has presented insufficient evidence to allow the finding of the existence of any one of the claimant's elements; or (3) that

6

> there is no genuine dispute as to the existence of each of the facts necessary to support a properly pleaded affirmative defense.

*Ameristar Jet Charter, Inc. v. Dodson Intern. Parts, Inc.*, 155 S.W.3d 50, 58-59 (Mo. banc 2005). "Summary judgment should seldom be used in employment discrimination cases, because such cases are inherently fact-based and often depend on inferences rather than on direct evidence." *Hill v. Ford Motor Co.*, 277 S.W.3d 659, 664 (Mo. banc 2009).

"Like federal courts, Missouri courts use the burden-shifting analysis developed in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) to evaluate proof in discrimination cases where disparate treatment is alleged." *Vermett v. State*, 544 S.W.3d 294, 299 (Mo. App. 2018); § 213.101.3,4. The Missouri legislature has declared that this format is to be considered highly persuasive for summary judgment analysis in cases not involving direct evidence of discrimination. § 213.101.3. Under this framework, once a plaintiff establishes a prima facie case of discrimination, the burden of production then shifts to the employer, who must rebut the presumption of discrimination with evidence that the alleged adverse employment action was for a legitimate, nondiscriminatory reason. *Vermett,* 544 S.W.3d at 299. If a legitimate, nondiscriminatory reason is established by the employer, the burden then reverts to the plaintiff to point to evidence which, if believed, would expose the employer's reason as a mere pretext for intentional discrimination. *Id.* To establish pretext, the plaintiff must show that a given justification is not worthy of belief. *Smith v. Aquila, Inc.*, 229 S.W.3d 106, 122 (Mo. App. 2007).

7

An employee may also show pretext through disturbing procedural irregularities, including evidence that the [employer] acted contrary to an unwritten policy or contrary to company practice when making the adverse employment decision affecting the [employee]. Pretext can also be shown through weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons, such that a reasonable factfinder could rationally find them unworthy of credence.

*Id.* at 123 (citations and internal quotation marks omitted).

**Preliminary Matters and Matters Relevant to All Claims**

<u>2017 Incident</u>

As to all of Emile's claims, Triumph argues that the June 2017 incident (involving Emile's allegation that she lost control of her bladder after being denied a restroom break) was not reported to the Commission within two years of the alleged cause occurring, or being reasonably discovered, and is time-barred under Section 213.111.1 which states, in part:

Any action brought in court under this section shall be filed within ninety days from the date of the commission's notification letter to the individual but no later than two years after the alleged cause occurred or its reasonable discovery by the alleged injured party.

We agree that the June 2017 incident, standing alone, is time-barred. Additionally, the June 2017 incident cannot be considered part of a "continuing violation" as it involved a different supervisor than the events Emile began reporting in May 2021, and occurred several years prior. Nevertheless, "prior acts may be used as background evidence in support of a timely claim." *Tisch v. DST Systems, Inc.*, 368 S.W.3d 245, 254 (Mo. App. 2012). Hence, where Triumph's knowledge of Emile's

8

medical condition and/or restrictions may be at issue in Emile's preserved claims, the 2017 incident may be relevant background evidence.[3]

<u>Adverse Employment Action</u>

As to all of Emile's claims, Triumph argued in its motion for summary judgment that Emile could not establish a prima facie case of discrimination because she did not suffer an adverse or tangible employment action, which is a required element of any employment discrimination claim. Triumph framed the summary judgment material facts as being that, Emile was denied or delayed a restroom break on two occasions, and although Emile alleged this was a continuing violation, the fact she filed separate charges of discrimination identifying two separate incidents "undermines any argument that this was an ongoing or continuing issue, as does Plaintiff's own testimony." Triumph argued that, two bathroom break delays/denials is insufficient to establish that Emile suffered an adverse employment action.

In the light most favorable to Emile, the record shows that in 2017, Triumph was aware that Emile had a medical condition that might require emergency bathroom breaks. After the first time she lost bladder control at work, she was given a notebook to sign in and out for bathroom breaks. B.L. began supervising Emile in May 2021. He admits that

---

[3]Emile had surgery around the time of the 2017 incident and was placed on a ten to fifteen-pound weight lifting restriction. According to the record, Emile believed her physical condition was due to the refusal and/or delay of bathroom breaks while working at Triumph, and testified that a specialist told her the reason she needed surgery was because she had to "hold the pee too long." Emile testified that she informed HR of this information after her first trip to the emergency room and first surgery. Emile's daughter went with Emile to speak to HR after the 2017 incident, and they were told it would never happen again.

9

he was informed of Emile's weight lifting restrictions and that, if she needed a bathroom break, he was to give it to her. Nevertheless, B.L. became upset with Emile when she told him that she was restricted from performing a task requiring her to lift more than fifteen pounds, and he wanted to take her to HR.

On May 22, 2021, B.L. wrote a statement that he gave to HR; Emile was given no opportunity to respond. B.L. reported that, Emile requested a bathroom break and then got mad after B.L. told her to wait. Emile allegedly walked off the line and went to the bathroom without signing the bathroom log.[4] B.L. told Emile that he would write her up and file a corrective action report if she left the line without his permission.

Two days later, on May 24, 2021, B.L. wrote a corrective action report on Emile after Emile was allegedly late in returning from a lunch break. B.L. reported that, when he tried to address Emile, she began yelling. B.L. took Emile to HR for disciplinary action.

On May 27, 2021, an HR representative met with Emile when Emile complained of being denied bathroom breaks. A coworker translated for Emile, and Emile's Union representative was present. HR prepared a document that was signed by all present. It stated that, Emile needed to sign the bathroom log when she needed extra breaks. Further, she needed to allow her supervisor/management to cover her place so production

---

[4]B.L. testified that Exhibit 17, which entailed a statement wherein Emile claimed that she asked at 7:35 a.m. to use the restroom and at 7:50 a.m. B.L. still had not let her go, was not the May 22, 2021 incident.

10

could continue. However, if Emile had an emergency, she "does not have to wait" and just needed to "notify management" before leaving.

Emile testified that she was not informed of the contents of the document when she signed, and was not told that she did not have to wait if she had an emergency. She was only told by her coworker/interpreter that she needed to obtain a doctor's note, and that if she went back to HR with the same problem, she would be fired. B.L.'s boss, Manager L, stopped Emile from speaking and only allowed Emile's coworker/interpreter to speak. Emile testified that she was pressured into staying on her job and to not take bathroom breaks. B.L. acknowledged that he told Emile she would get in trouble if she left the production line without permission.

On June 3, 2021, Emile badly needed to use the restroom and a coworker held the line for her. Upon her return, Emile was taken to HR and reported for leaving the line. On another occasion, Emile's "trainer" released her to use the restroom. On her way, B.L. stopped her, forced her to return to her work station, and again took her to HR.

On June 24, 2021, Emile obtained a medical note from her physician. It stated that Emile needed accommodations regarding bathroom breaks, and required three bathroom breaks throughout her shift in addition to the already scheduled daily breaks. Emile provided this note to Triumph's benefit office which made copies and distributed them.

Despite providing the note, Emile was still prevented from taking emergency bathroom breaks, got warned when she took emergency breaks, and was threatened with being fired. Manager L. wanted to know how long the doctor's note would be in effect.

11

Emile asked why she was the only person they had an issue with when she needed an emergency break, as everyone else used the restroom any time they needed. Emile did not want to drink or eat for fear she would need to use the bathroom, be prevented, and be unable to control her bladder or bowels.

On August 10, 2021, Emile requested an emergency break from B.L. Emile testified that, "He refuse me to go to the restroom. He stop me all the time. And the time that I want to go that I need to use restroom so bad and then he went to his office and hide and never come back to the floor to release me." Emile stated that it took B.L. ten to fifteen minutes to release her, but by that time, she had urinated on herself. Emile was again taken to HR by B.L. who denied knowledge of Emile's doctor's note.

On November 18, 2021, Emile filed a Charge of Discrimination with the Missouri Commission on Human Rights alleging Triumph had been engaging in continued discrimination and retaliation against her on the basis of disability, race, color and national origin by denying her necessary bathroom breaks. Further, that the denial of bathroom breaks had caused her to urinate on herself in June 2017 and August 2021.

On May 18, 2022, Emile requested an emergency bathroom break from B.L. Emile testified that B.L. stated, "No, no, no, wait, wait," and that B.L. was then "standing up there and looking at me." Emile testified that everyone else had already taken a break, and she was the only one who did not get a break. Another coworker attempted to get B.L. to release Emile. He did not, and Emile defecated on herself. Instead of allowing Emile to go to the restroom, B.L. called her and an interpreter to his office and requested

Emile sit down. She could not because her uniform was soiled. She told him what happened, and he sent her to the bathroom to clean up. She then returned to work. At the end of the day, Emile went to HR. She was told to report back to HR the following day. The following day, no one in HR talked to her, and she was not provided an interpreter.

Given this evidence, we find that, while a reasonable factfinder might agree with Triumph that Emile's "assertion about delay or denial of two breaks over the course of two years does not amount to an adverse employment action," a reasonable factfinder could also conclude that the delay/denial of restroom breaks was an ongoing occurrence that spanned a period of time (which at times resulted in Emile's loss of bladder/bowel control) and thereby adversely affected terms, conditions, and privileges of Emile's employment.[5]

To presumably rebut any showing by Emile that the bathroom break denials constituted adverse employment actions, Triumph argued in its summary judgment motion that any delay beyond the breaks provided in the union contract was for the legitimate, non-discriminatory purpose of finding someone to replace Emile on the production line. The record, however, does not unequivocally support this conclusion.

B.L. testified that he had a "utility person" who gave bathroom breaks, but sometimes that person was giving someone else a bathroom break, which required B.L. to

---

[5]Although Emile's petition includes a claim that she was constructively discharged from her employment, at oral argument her counsel expressly stated that Emile was not seeking reversal of the circuit court's grant of summary judgment on her constructive discharge claim. We accordingly do not address that aspect of the circuit court's judgment.

13

find another replacement. Yet, B.L. also testified that he could personally fill Emile's spot, and sometimes did so. Given this, and accepting Emile's account of the circumstances, the record does not explain why B.L., with full knowledge of Emile's emergency bathroom needs, did not personally relieve her and instead required her to wait.

Further, the May 27, 2021, document drafted by HR states that Emile needed to only *notify* management before leaving her line in the event of an emergency. She did not need to wait, or even seek permission. Yet, even after this document was drafted, Emile was taken to HR to be disciplined when she had other employees cover for her at a time she "badly" needed to use the restroom. During the May 18, 2022, incident involving Emile soiling her pants, Emile *notified* B.L. that she had an emergency and needed to use the restroom, and B.L. *told her to wait*. Rather than releasing Emile to use the restroom, B.L. instead called Emile into his office.[6]

---

[6]While not necessary to our disposition, the record is not completely clear that the breaks Emile alleges she was denied were *not* contractual breaks guaranteed in the Union contract. While Emile admitted to Triumph's statement of fact #13, which states that Emile testified that her claims as to delayed or denied breaks do not relate to the three Union contractual breaks, but rather "additional 'emergency' breaks that she requested," Emile's testimony (which is cited by Triumph to support DSOF #13), in context, does not actually support this statement.

Emile testified that her line had a start time of 5:45 a.m. At 8:00 a.m., the entire line took a fifteen-minute break. At 10:00 a.m., the entire line took a thirty-minute lunch break. When asked "the time of the next break that everyone on the line took," Emile responded: "But after 10:30 the other breaks are emergency breaks, but we take it at any time when we need it." Hence, the record suggests that Emile terms the third contractual break an "emergency break."

14

This evidence reveals material facts in dispute as to whether Triumph's delay/denial of restroom breaks to Emile had a legitimate, non-discriminatory purpose, or if Triumph's stated reason of finding someone to replace Emile on the production line was pretextual.

<u>Hostile Work Environment</u>

In all of Emile's claims, Emile contended the discriminatory/retaliatory behaviors constituted a hostile work environment. Our Missouri Supreme Court has recently stated:

> … This Court has recognized that generalized claims of discrimination based on a course of conduct, such as hostile work environment claims, are governed by the MHRA if the hostility was directed at an individual because of his or her status in a protected class. Likewise, the Supreme Court of the United States has recognized hostile work environment claims under Title VII. The Supreme Court interpreted the phrase 'terms, conditions, or privileges of employment' to 'strike at the entire spectrum of disparate treatment of men and women in employment, which includes requiring people to work in a discriminatorily hostile or abusive environment.' Likewise, a discriminatory hostile or abusive environment affects the 'terms, conditions, and privileges of employment' under Missouri law. *See* Section 213.055.1(1)(a).
>
> ....
>
> ... Discriminatory harassment affects a term, condition, or privilege of employment if it is 'sufficiently severe or pervasive [enough] to alter the conditions of the [claimant]'s employment and create an abusive working environment.' The harassing conduct must be severe and pervasive enough to create a hostile or abusive working environment as viewed subjectively by the claimant and as viewed objectively by a reasonable person. A [claimant] can show that harassment affected a term, condition, or privilege of her employment by showing a **tangible** employment action, or an abusive working environment.

15

*Matthews v. Harley-Davidson*, 685 S.W.3d 360, 366-67, 368 (Mo. banc 2024)

(internal quotation marks and citations omitted).

As to all of Emile's claims, Triumph alleged in its motion for summary judgment that Emile's allegations could not support a hostile work environment claim, arguing that delayed or denied restroom breaks on three occasions over a five-year period is insufficient as a matter of law to demonstrate a hostile work environment.

Given the evidence discussed above, and the fact that a reasonable factfinder could conclude that the delay/denial of restroom breaks was an ongoing occurrence that spanned a period of time and thereby adversely affected terms, conditions, and privileges of Emile's employment, we find genuine issues of material fact as to whether a reasonable factfinder could also conclude that Emile was subjected to an intimidating, hostile, or offensive work environment.  *Hill*, 277 S.W.3d at 666 (holding that "[a] plaintiff can meet the requirement of proving that the harassment affected a term or condition of her employment by showing that the harassment contributed to cause a 'tangible employment action'"); *Marcantonio v. Bd. Of Curators of Lincoln Univ.*, 702 S.W.3d 153, 168-69 (Mo. App. 2024).

**Point I – Race/National Origin Discrimination**

In Emile's first point on appeal, she contends the circuit court erred in granting summary judgment to Triumph on her MHRA claim based on her race and national origin (Black/Haitian), arguing genuine issues of material fact exist regarding whether her race or national origin was a determining factor in the discriminatory actions taken against her.

16

The MHRA prohibits an employer from discriminating against any individual with respect to her compensation, terms, conditions, or privileges of employment because of her race. *Matthews*, 685 S.W.3d at 366 (Mo. banc 2024) (citing Section 213.055.1(1)(a)). "Because of," as it relates to the adverse decision or action, means the employee's race, color, and/or national origin was the "motivating factor" for the alleged discriminatory actions. § 213.010 (2). "The motivating factor," is defined as "the employee's protected classification actually played a role in the adverse action or decision and had a determinative influence on the adverse decision or action." § 213.010 (19); *Matthews*, 685 S.W.3d at 366 n.4.

To make a claim for racial/national origin discrimination, Emile was required to show: (1) she suffered an adverse employment action; (2) her race and/or national origin was a motivating factor; and (3) she was damaged as a result. *Clark v. AT&T Mobility Services, L.L.C.*, 623 S.W.3d 197, 203 (Mo. App. 2021).

Triumph argued in its motion for summary judgment that Emile produced no evidence to show that the denial of breaks was due to unlawful discrimination.

Emile's statement of facts and supporting evidence show that Emile was the only non-Hispanic employee on her line, and Emile was treated differently than others on her line. Emile was the only employee who had to wait for permission to use the restroom. When asked if she was treated differently when it came to restroom breaks, Emile testified, "Yes, I notice sometime those people they use restroom without need—any need, they just left the line and go to break. You know, and then come back any time

17

they want and the boss had nothing to say because they are Hispanic." B.L. treated "all his people like king and queen and I'm the only one treat like s-h-i-t, you know." Further, B.L.'s boss, Manager L, told Emile directly, and in the presence of other employees, that he did not like black people.

Triumph did not directly refute any of this evidence. Emile's statement of fact (PSOF) #43 states that she was the only employee on her line who had to wait for permission to use the restroom. Triumph does not deny the statement, but responds that this is inconsistent with Emile's other testimony. Yet, even if the testimony cited by Triumph could be perceived as inconsistent (i.e., Emile testified that if other employees were refused a break, they would just leave without supervisor approval, and sometimes others complained, "but I'm the only one who get, you know, in all the incidents"), any inconsistencies do not necessarily negate Emile's claim. Emile was taken to HR for leaving the line without permission, and B.L. admitted to threatening Emile with disciplinary action if she left the line without permission. According to Emile, no other employees on Emile's line were reprimanded when they left the line without permission, and all other employees on the line were Hispanic. The May 27, 2021, HR document did not require Emile to have permission to use the restroom in the event of an emergency; she was only required to notify management before she left.

Triumph denied Emile's PSOF #45 which states that, "Everyone else on her line was Hispanic, like Lopez," stating that Emile testified there were other Haitian coworkers working with her. Yet, Emile testified that the other Haitian coworkers were in other

18

parts of the workplace and not on her line, or were not daily employees and only called in for overtime. It is unclear from the record whether an employee called in for overtime receives the same breaktime benefits as other employees under the Union's collective bargaining agreement.

Emile's PSOF #46 alleges Emile was treated differently because of her race and/or national origin, and cites Emile's testimony that she was the only Haitian and the Hispanic boss treated "all his people like king and queen…." Triumph's response is that PSOF #46 is a legal conclusion, and the "vague testimony about treated like a king or queen does nothing to advance Plaintiff's hostile work environment claim."

Emile's PSOF #48 states that Manager L said "he doesn't like black people." Triumph denies the fact on the grounds that Emile does not speak English[7] and other coworkers translated what Manager L said to her, arguing Emile had no personal knowledge of whether Manager L actually made that statement. Triumph produced no evidence to refute the statement in any other manner.

Moreover, while a reasonable factfinder might agree with Triumph that Emile's race/national origin had no determinative influence on any adverse employment actions taken against her, the summary judgment record contains facts from which a reasonable factfinder could reach the opposite conclusion. Further, the evidence that Triumph's stated reasons for limiting Emile's restroom breaks were pretextual would also support a

---

[7]In other parts of the summary judgment record, Triumph suggests that Emile does understand English.

19

finding of discriminatory animus. *See Marcantonio*, 702 S.W.3d at 176; *Kelly v. City of Lee's Summit*, 623 S.W.3d 758, 767 (Mo. App. 2021) ('evidence that an employer's stated reasons for [an adverse action] were pretextual can be some of the most powerful circumstantial evidence supporting a discrimination claim.').

The circuit court erred in granting summary judgment to Triumph on Emile's claim for race/national origin discrimination under the MHRA. Point I is granted.

**Point II-Disability Discrimination**

In her second point on appeal, Emile contends the circuit court erred in granting summary judgment to Triumph on Emile's MHRA claim for disability discrimination, arguing genuine issues of material fact exist regarding whether she was disabled, as defined under the MHRA, and whether her disability was a determining factor in the discriminatory actions taken against her.

To establish a prima facie case of disability discrimination under section 213.111 of the MHRA, Emile must show that: (1) Emile is legally disabled; (2) Emile was discharged or otherwise subjected to an adverse employment action; and (3) Emile's disability was the motivating factor. *Ashby v. Woodridge of Missouri, Inc.*, 673 S.W.3d 537, 544 (Mo. App. 2023). A qualifying MHRA "disability" is: "a physical or mental impairment which substantially limits one or more of a person's major life activities, being regarded as having such an impairment, or a record of having such an impairment, which with or without reasonable accommodation does not interfere with performing the job[.]" § 213.010(5).

Triumph argued in its motion for summary judgment that Emile had only one "timely and actionable incident related to a restroom break," and that was the May 2022 incident that involved Emile having an upset stomach due to something she ate.[8] Triumph argued that an upset stomach is not a disability as a matter of law. Triumph additionally argued that Emile has no actionable claim for disability discrimination because she quit working at Triumph due to lifting restrictions and on the recommendation of her physician, and therefore could not perform her job with or without reasonable accommodation.

First, Triumph does not dispute that, despite Emile having lifting restrictions and needing additional bathroom breaks, Emile successfully performed her job duties during her eight years on the production line. Emile's claims first arose while she was employed with Triumph. Emile's resignation letter states that her medical problems, which caused her to look for a less strenuous job and resign, were caused by Triumph's refusal to give her necessary restroom breaks. She also states that she had "no choice but to resign" because of the "unfair treatment from several staff...." Moreover, Emile's ability to perform the Triumph job with or without reasonable accommodation *after* her resignation is not clear from the summary judgment record. Even if it were, that determination

---

[8]Triumph argued that Emile's petition was untimely as to her November 18, 2021, Charge of Discrimination, which discussed the August 2021 incident where Emile urinated on herself after being denied a restroom break. Triumph ultimately conceded that Emile's petition was timely as to the November 18, 2021, Charge of Discrimination.

would not dictate whether Emile had a qualifying MHRA disability while she was employed with Triumph.

Second, in response to Triumph's argument that Emile has no disability claim because an upset stomach is not a disability, Emile responded that she was disabled because she could not go long periods of time without having to use the restroom. Consequently, her major life activity of self-care was impacted. She supplied Exhibit 9, a doctor's note which states that she needed accommodations regarding bathroom breaks. Emile also argued that Triumph regarded her as being disabled.[9] Triumph did not address or attempt to rebut any of Emile's responses in its reply, leaving material facts in dispute as to whether Emile had a qualifying disability under the MHRA and whether Triumph regarded Emile as having an impairment. Likewise, material facts are in dispute as to whether any disability or perceived disability had a determinative influence on alleged adverse employment actions.[10]

---

[9]Triumph argues on appeal that Emile never claimed to the circuit court that she had a disability based on lifting restrictions. Yet, Emile's SOF #57 states: "Emile carried a company-issued card (Ex. 13) that showed she had a permanent restriction that she was not to lift anything heavier than 15 pounds. When she showed this to [B.L.], he became upset and wanted to take her to HR." Triumph responded: "Denied, but immaterial. Admitted that Plaintiff so testified. [B.L.] testified that he knew Plaintiff had lifting restrictions at the time he became her supervisor."

[10]In its appellate brief, Triumph now argues that Emile's urinary incontinence itself does not qualify as a disability, because it did not substantially limit a major life activity. Triumph did not make this argument in the circuit court as a basis for granting summary judgment, however, and we do not further address it.

The circuit court erred in granting summary judgment to Triumph on Emile's claim for disability discrimination under the MHRA. Point II is granted.

### Point III – Retaliation

In her third point on appeal, Emile contends the circuit court erred in granting summary judgment to Triumph on Emile's MHRA claim for retaliation, arguing genuine issues of material fact exist regarding whether her protected activity was a determining factor in the discriminatory actions taken against her. She contends that she complained of discrimination and opposed what she believed in good faith was discrimination on the basis of her race and disability, and Triumph's reasons for retaliating against her were pretextual.

Section 213.070.1(2) forbids an employer from retaliating or discriminating in any manner against a person who has either opposed a discriminatory practice forbidden by the MHRA, or filed a complaint, testified, assisted, or participated in any manner in any investigation, proceeding, or hearing concerning discrimination pursuant to the MHRA. *Barrett v. Cole County*, 687 S.W.3d 685, 703 (Mo. App. 2024). To present a prima facie case of retaliation under the MHRA, Emile must show, 1) she demonstrated opposition to and/or complained of discrimination, 2) the employer took adverse action against her, and 3) a causal relationship existed between the complaint of discrimination and the adverse employment action. *Gray v. Missouri Department of Corrections*, 635 S.W.3d 99, 104 (Mo. App. 2021).

To retaliate is to "inflict in return," and retaliation includes "any act done for the purpose of reprisal that results in damage to the plaintiff…." *Walsh v. City of Kansas City*, 481 S.W.3d 97, 106 (Mo. App. 2016) (internal quotation marks and citation omitted). "[I]t is irrelevant to a claim of retaliation that the act complained of was not legally actionable. The only issue is whether the person making the complaint had a reasonable good faith belief that there were grounds for the claim of discrimination or harassment." *Soto v. Costco Wholesale Corp.*, 502 S.W.3d 38, 48 (Mo. App. 2016) (internal quotation marks and citations omitted).

Triumph argued in its motion for summary judgment that Emile did not engage in protected activity when she requested additional restroom breaks, did not demonstrate an adverse employment action, and argued that Emile's evidence was insufficient to establish causation. Triumph argued that any actions it took served a legitimate nondiscriminatory purpose and its explanations were not pretext for discrimination.

We discussed above that there are material facts in dispute as to whether Emile was subjected to adverse employment actions and whether any explanations for those actions were pretext for discrimination.

As to whether Emile expressed opposition to and/or complained of discrimination, in May 2021, B.L. became Emile's supervisor and testified that he was informed of Emile's weight lifting restrictions and that, if she needed a bathroom break, he was to give it to her. Emile testified that B.L. was upset about Emile's weight lifting restrictions. On May 22, 2021, B.L. filed a statement with HR that Emile was not

24

informed of or given the opportunity to respond to. It stated that, when Emile asked for a bathroom break, he told her to wait until he found someone to take her place. Emile then started "getting mad, shaking hands,[11] and after a few minutes she walk off the line and went to the bathroom." On May 27, 2021, Emile complained to Triumph's HR department that B.L. was denying her bathroom breaks and forcing her to wait excessive amounts of time before allowing her to leave. She reported being the only one required to wait for someone to cover her place so that she could leave. On August 10, 2021, Emile requested an emergency break which was denied, and Emile urinated on herself.

On November 18, 2021, Emile filed a Charge of Discrimination with the Missouri Commission on Human Rights, alleging the above information and that she was being treated unfairly because of her race, national origin, color, and disability. Further, that she had been retaliated against for exercising her rights under the Missouri Human Rights Act. On May 18, 2022, Emile requested an emergency bathroom break from B.L. She alleged that B.L. purposefully delayed this break and Emile defecated on herself. Emile filed another Charge of Discrimination on June 16, 2022.

The record is clear that Emile complained of discrimination when she filed her Charges of Discrimination, and there are genuine issues of material fact as to whether a reasonable factfinder would consider Emile's complaints to HR as complaints about and/or opposition to protected activity. Likewise, there are material facts in dispute as to

---

[11]B.L. also testified that, because Emile does not speak English, she uses hand signals to notify management that she needs a restroom break.

25

whether there is a causal connection between Emile's opposition to and/or complaints of discrimination and any adverse employment action taken by Triumph.

The circuit court erred in granting summary judgment to Triumph on Emile's claim for retaliation under the MHRA. Point III is granted.

## Conclusion

The circuit court erred in granting summary judgment to Triumph on Emile's claims of race/national origin discrimination, disability discrimination, and retaliation under the MHRA. The circuit court's judgment is reversed, and the cause remanded for further proceedings consistent with this opinion.[12]

Anthony Rex Gabbert
Chief Judge

All concur.

---

[12]On February 17, 2025, Emile filed a "Motion for Award of Attorney's Fees on Appeal." Emile's motion is denied. Emile may revisit the issue with the trial court if she is the prevailing party in the underlying litigation.